WILKINSON v. THE STATE.

CRIMINAL LAW.—*Sunday Law.*—*Common Labor.*—Labor performed on Sunday, which is necessary, under any particular state of circumstances, for the accomplishment of a lawful purpose, is not a violation of the Sunday law.

SAME.—*Former Conviction.*—*Parol Evidence of.*—One convicted of a violation of the Sunday law, on his own confession, by a justice of the peace, may prove the same in bar of a subsequent indictment for the same offence ; and where, without objection, such proof is made by parol, it is sufficient.

From the Gibson Circuit Court.

*J. R. Burton* and *E. E. Wilkinson*, for appellant.

*W. H. Trippet*, Prosecuting Attorney, and *C. A. Buskirk*, Attorney General, for the State.

HOWK, J.—The appellant was indicted at the August term, 1877, of the court below.

The indictment charged, that, on the 29th day of July, 1877, at Gibson county, Indiana, the appellant, who was at that time over fourteen years of age, said day being the first day of the week, commonly called Sunday, was

found unlawfully at common labor and engaged in his usual avocation, to wit, then and there loading and hauling melons, such common labor and usual avocation not being then and there work of charity or necessity, and the appellant not being then and there one who conscientiously observed the seventh day of the week as the Sabbath, nor a traveller, a family removing, a keeper of a toll-bridge or a toll-gate, or a ferryman acting as such; contrary to the form of the statute, etc.

Afterward, at the January term, 1878, of the court below, the appellant appeared, and, for plea to said indictment, said that he was not guilty; and the issues joined were tried by a jury, and a verdict was returned, finding the appellant guilty as charged in the indictment, and assessing his fine in the sum of one dollar and fifty cents.

The appellant's written motion for a new trial was overruled by the court, and his exception to this decision was duly saved, and judgment was then rendered on the verdict, from which judgment this appeal is now here prosecuted.

The only error assigned by the appellant, in this court, is the decision of the court below, in overruling his motion for a new trial. In this motion, the causes assigned for such new trial were, that the verdict of the jury was contrary to law, and that it was not sustained by sufficient evidence.

It will be seen, that the question for our decision in this cause is this: Were the verdict of the jury, and the judgment of the court below thereon, sustained by sufficient legal evidence? The evidence on the trial is properly in the record; and we find it necessary to the proper understanding of this cause, and of our decision thereof, that we should set out the substance of the evidence in this opinion. But, before doing so, we will first give the section of the statute under which the indictment was found against the appellant. The section referred to is

the 1st section of an act entitled "An act for the protection of the Sabbath, and providing penalties for the desecration thereof," approved February 28th, 1855. Omitting the enacting clause, this 1st section reads as follows:

"That if any person of the age of fourteen years and upwards, shall be found, on the first day of the week commonly called Sunday, rioting, hunting, fishing, quarrelling, at common labor, or engaged in their usual avocations, works of charity and necessity only excepted, such person shall be fined in any sum not less than one nor more than ten dollars; but nothing herein contained shall be construed to affect such as conscientiously observe the seventh day of the week as the Sabbath, travellers, families removing, keepers of toll-bridges and toll-gates, and ferrymen, acting as such." 2 R. S. 1876, p. 483.

We will now give the evidence, as it is contained in the record.

William Kimball, a witness for the State, testified as follows: "My name is William Kimball. I live in Gibson county, Indiana. I know the defendant, Silas Wilkinson; that is him (pointing to the defendant). Have known him for several years. On the 12th day of August, 1877, I saw the defendant hauling watermelons; that day was Sunday; he was hauling a wagon-load with two horses; it was some time in the afternoon of that day that I saw him; he was going in the direction of Evansville, Indiana. It was in Gibson county, State of Indiana, that I saw defendant hauling watermelons on that Sunday; he had about one hundred watermelons in the wagon."

On cross-examination, this witness testified: "The defendant, Wilkinson, resides upon a farm about twenty-five or twenty-six miles from Evansville; his melon patch was on his farm."

The State then rested.

William H. Overton, a witness for appellant, testified as follows: "My name is William H. Overton. I reside in Gibson county, Indiana; have lived here continuously for

fifteen or sixteen years. Am a farmer. I have had a great deal of experience raising watermelons. I have raised them for several years. I know the defendant, Silas Wilkinson; have known him for a long time; he raised a patch of melons last season, the Summer of 1877; he had four or five acres in the patch. On the 12th day of August, 1877, I was in his melon patch. It was on his farm, near the house in which he lives; at that time there were between five and six hundred melons in that patch, on that day, that had spoiled; they had grown too ripe, and had begun to decay. There were as many more just right to be plucked from the vine. Watermelons will not last but a short time after getting ripe; they ought to be used at once. It depends upon the weather largely how long they will last. I have known thousands destroyed in from twelve to twenty-four hours after they first got ripe."

On cross-examination, this witness testified: "Nearly every one who raises melons loses more or less of them. There are a great many raised in the neighborhood where Wilkinson lives. The reason they lose them is because watermelons get ripe all at once, and it is next to an impossibility to get them all to market."

The appellant, as a witness in his own behalf, testified as follows: "My name is Silas Wilkinson. I reside in Gibson county, Indiana; have lived in this county continuously for the past twenty-five years. Am a farmer; am the defendant in this suit. In the Summer of 1877, I raised a patch of watermelons on my farm in this county. I had only the one patch in the Summer, or during the year of 1877. On Sunday, the 12th day of August, 1877, I started with a two-horse wagon-load of watermelons, taken from my patch, for Evansville, Indiana. Evansville is twenty-six miles from my farm. Evansville was my market for my melons at that time. On that Sunday, there were at least five or six hundred melons in my patch, dead ripe, and ready for the market. There were at least as

many more then spoiled for the want of being plucked from the vine and taken to market. The 12th of August, 1877, was right in the middle of the melon season, and they would get ripe faster thau I could haul them to market. I could only haul about one hundred melons at a load. I had to haul them tweuty-six miles. I had only one team of my own. Joel Grigsby had helped me all the week before, until Friday before this Sunday, when he was taken sick. I tried to get other help and could not. I hauled all the week before, and all the week beginning on August 12th, 1877. I saved the load of melons I started with on that Sunday. I lost at least two thousand melons that season, because I was unable to get them to market."

On cross-examination, the appellant testified: "I loaded up my melons on Saturday night before the Sunday, August 12th, 1877. I started for Evansville early in the afternoon of that Sunday. I did not start in the morning, because there were relatives visiting my family, and because I could reach the Monday morning market at Evansville by waiting until the afternoon. I could, perhaps, have left home at midnight on Sunday night, and reached Evansville by the time I left there on Monday morning. I did not do it, because my team would have been exhausted, and I would have lost time on Monday. I went within two miles of Evansville on Sunday. Early Monday moruing, with a fresh team, I drove to Evansville, disposed of my melons, and I started at once, by nine o'clock A. M., for home. I reached home in time to load up another load for Tuesday's market. I did not start with another load until Tuesday morniug early. I might have started at midnight, Sunday night, reached Evansville by the time I started home on that Monday, disposed of my melons, and returned immediately home, but the effort would have exhausted my team. I could have started at or after twelve o'clock on the night after the Sunday in question, and got to Evansville about nine

o'clock on the Monday morning following, rested my horses and started home in the afternoon on the said Monday, and got home in time to load up again and be ready to start again on the Tuesday following, by the time I did start on said Tuesday, but it would have made me late in the evening on Monday, loading up. I could not make a load each day, but only a load every other day. I was before John Martin, a justice of the peace, to answer to the same charge for which I am now being tried. I then plead guilty, and was fined one dollar. It was some time in September, 1877."

Joel Grigsby, a witness for the appellant, testified as follows: "My name is Joel Grigsby. I live in Gibson county, Indiana; have lived here for fifteen years; am a farmer. I know the defendant, Silas Wilkinson; have known him for several years. I have raised watermelons for several years. I was in defendant's watermelon patch on the Friday before August 12th, 1877. I had been hauling melons to Evansville all that week, out of that patch, for Wilkinson. I could only haul a load every two days. I would go down one day, and back the next. I quit hauling on Friday, because I was not well. There were a great many melons then in the patch, that were spoiling for the want of being plucked from the vine and used. I should say there were five hundred that ought to have been taken that day to market, besides a number that were already spoiled, because they had not been taken sooner."

This was all the evidence on the trial of this cause, as the same appears in the record. Under this evidence, the question arises, and this is the main question in this case, was there a "necessity," within the meaning of that word as the same is used in the statute before cited, that the appellant should perform the common labor charged in the indictment, on the first day of the week, commonly called Sunday? It is well settled, we think, that by the word "necessity," as used in the statute, is not meant, that

the necessity for the work, on which the charge is predicated, should be a physical or absolute necessity. Such labor, on Sunday, as may be necessary to the acomplishment of a lawful purpose, under the circumstances of any particular case, can not be considered as within the purview and prohibition of the statute for the protection of the Sabbath.

In the case of *Morris* v. *The State*, 31 Ind. 189, where the appellant had been engaged in hauling and boiling sugar-water, on a certain Sunday, and it appeared that it was a good day for the flowing of the water, that the appellant's troughs were full and overflowing, and that he had no way to save the water but by gathering and boiling it, it was held by this court, that his labor was a work of necessity, within the meaning of the term as used in the statute. So, also, in the case of *Crocket* v. *The State*, 33 Ind. 416, it was held, that such labor, on Sunday, as was a necessary incident to the accomplishment of a lawful purpose, such as the manufacture of malt beer, was a work of necessity, within the meaning of those words as the same are used in the law for the protection of the Sabbath. The two cases cited from our own Reports, are well supported by the decisions of the courts of other States, on statutes similar to the statute of this State. These decisions are cited as authorities in our own cases, before noticed, and we refer to them there, without again citing them.

It is difficult, if not impossible, to distinguish the case at bar, in principle, from the case of *Morris* v. *The State*, before referred to. The melon season, like the sugar-making season, is of but short duration, "depending on the season and the weather." In this case, it would seem that a kind Providence had crowned the labors of the appellant with a bounteous harvest of melons. They were ripening and decaying much faster than, with the facilities and labor at his command, he could possibly get them to market. His melon patch was

twenty-six miles from his market. He could only haul a load to market every two days, and a load was one hundred melons. He could not hire any assistance. On Sunday, August 12th, 1877, the day mentioned in the evidence, there were at least five or six hundred melons in his patch, " dead ripe, and ready for the market." A ripe watermelon, in its season, is a luxury; but there is nothing more " stale, flat and unprofitable " than a decayed or rotten melon. Under the circumstances, what was the appellant to do? It seems to us, that it was his duty, as a prudent and careful husbandman, to labor diligently in getting as many of his melons as he could into market, so that the fruits of his toil might not be wasted, nor suffered to decay. Whatever it was his duty to do in the premises, there was a moral necessity for him to do. And, in the accomplishment of the main purpose, of saving and securing the benefit of his crop of melons, whatever labor he was reasonably required to do on Sunday, must be regarded, as it seems to us, as a work of necessity.

Under the circumstances shown by the evidence in this case, it seems to us, that the labor in which the appellant was engaged on Sunday, August 12th, 1877, and for which he was indicted, was a necessary incident to the accomplishment of a lawful purpose, namely, the saving and getting into market his crop of melons, and was, therefore, a work of necessity, within the meaning of that expression, as the same is used in the statute for the protection of the Sabbath. Nor do we think that the fact that, by getting up at midnight on Sunday night, and driving all the remainder of the night, he could have reached Evansville in time for the Monday morning market, made his labor on Sunday afternoon any the less a work of necessity. It is not necessary to the protection of the Sabbath, that men should abuse or overwork either themselves or their horses, by midnight labor; and, in our opinion, it is no desecration of the Sabbath to

garner and secure, on that day, the fruits of the earth, which would otherwise decay and be wasted.

On one other ground, it seems to us, the conviction of the appellant in this case was clearly wrong. By section 97 of the criminal code, it is provided, that, under the general issue, "every matter of defence may be proved." 2 R. S. 1876, p. 398. Under this provision it has been held, that a former conviction for the same offence might be proved in bar of the pending prosecution. *Lee* v. *The State*, 42 Ind. 152. In the 2d section of the act for the protection of the Sabbath, etc., before referred to, it is provided, that, in all cases under said act, justices of the peace and courts of common pleas (now circuit courts) shall have concurrent jurisdiction. Of course, the record is the best evidence of such former conviction; but, if neither party objects, it may be proved by oral evidence. As we have seen, it was proved, on the trial of this case, by the appellant's own evidence, without objection by the State, that he was tried by John Martin, a justice of the peace, on "the same charge" for which he was then on trial, and that he then plead guilty, and was fined one dollar. It seems to us, that this former conviction was a complete bar to this prosecution.

In our opinion, the court below erred in overruling the appellant's motion for a new trial.

The judgment is reversed, and the cause is remanded for a new trial.