Carver *v.* The State.

---

## CARVER *v.* THE STATE.

CRIMINAL LAW.—*Sunday Law*—*Common Labor.*—*Indictment.*—An indictment under section 1 of the act providing penalties for the desecration of the Sabbath, 2 R. S. 1876, p. 483, which charged that the defendant, being over fourteen years of age, on a certain day, which was the first day of the week commonly called Sunday, at and in a certain county in this State, did then and there unlawfully engage in common labor and his usual avocation, in this, to wit, that he did then and there unlawfully sell and deliver to a named person two cigars, and receive from him the sum of ten cents in payment for the same, the said act of common labor not

Carver *v.* The State.

being, etc., averring properly the negatives in the section, is sufficient under the statute.

SAME.— *Work of Necessity.*—*Selling Cigars at Hotel.*—Labor performed on Sunday, which is necessary under any particular state of circumstances, for the accomplishment of a lawful purpose, is not a violation of the Sunday law. Keeping a hotel in this State on Sunday in the same way that it is usually kept on a week day is not unlawful ; and if a hotel keeps a cigar stand, which is a part of its establishment, from which it sells cigars to its guests, boarders and customers on a week day, the selling of cigars from the same stand, in the same way, on Sunday, is not unlawful.

From the Decatur Circuit Court.

*J. S. Scobey*, for appellant.

*T. W. Woollen*, Attorney General, and *J. L. Bracken*, Prosecuting Attorney, for the State.

BIDDLE, J.—The appellant was indicted under the act providing penalties for the desecration of the Sabbath. The charge in the indictment is alleged in the following words :

" That, on the 16th day of November, 1879, which was the first day of the week commonly called Sunday, Sidney A. Carver, who was then and there a person over the age of fourteen years, at and in the county of Decatur and State of Indiana, did then and there unlawfully engage in common labor and his usual avocation, in this, to wit, that he did then and there unlawfully sell and deliver to one Harvey D. Stagg two cigars, and receive from him the sum of ten cents in payment for the same, the said act of common labor not being," etc. The indictment then properly avers the negatives in the section upon which it is founded.

Trial; conviction; judgment; appeal.

The indictment is based upon the following section of the act of February 28th, 1855, 2 R. S. 1876, p. 483 :

" SECTION 1. *Be it enacted*," etc., " That if any person of the age of fourteen years and upwards, shall be found, on the first day of the week commonly called Sunday, riot-

ing, hunting, fishing, quarrelling, at common labor, or engaged in their usual avocations, works of charity and necessity only excepted, such person shall be fined in any sum not less than one nor more than ten dollars; but nothing herein contained shall be construed to affect such as conscientiously observe the seventh day of the week as the Sabbath, travellers, families removing, keepers of toll-bridges and toll-gates, and ferrymen, acting as such."

Two questions are presented by the record:

1. The sufficiency of the indictment under the statute;

2. The sufficiency of the evidence to support the conviction.

We will consider these questions in their order.

1. No objection to the indictment has been shown to us, and we see none; we must therefore hold it to be good.

2. Does the evidence support the conviction?

The evidence shows substantially the following facts: That the defendant was a clerk and book-keeper in a hotel; that the hotel kept a cigar stand within three to five feet from the desk of the book-keeper; that another person, an employee of the hotel, usually attended to the cigar stand, which was kept for the accommodation of the hotel, and was a part of the establishment, but that the defendant, in the absence of the person who usually attended to the cigar stand, occasionally sold cigars to the guests and boarders of the hotel, and sometimes to the customers and visitors of the hotel; that on this occasion, in the absence of the person who attended to the cigar stand, the defendant made the sale on Sunday, charged in the indictment.

Do these facts constitute the misdemeanor charged in the indictment, within the fair meaning of the law?

The condition of a country, the form of its government, the history of its inhabitants, their pursuits, general intelligence, modes of life, manners and habits, enter into the construction of the laws made to govern them; and laws

are not made so much for their abstract perfection as for their adaptability to the people they govern. We must also look to the period of the world at which they were enacted to get at their meaning, that meaning being the true intent and purpose of the legislative power that enacted them. What, then, did the Legislature mean by the use of the words " works * * of necessity," in the law under consideration? The word " necessity" means, 1, irresistible force; 2, inevitable consequence. But these are not its true meanings when used in a law touching the voluntary conduct of men. It means, 3, being necessary; 4, something that is necessary. We say " The necessities of our nature; the necessaries of life. Habit and desire create necessities; but nature requires only necessaries." Sometimes the word " necessity " means no more than " occasion," or that which gives rise to something else. *Worcester*. We are not to seek the physical, metaphysical, philosophical, scientific, moral, or theological meaning of the word " necessity;" but its legal meaning, as applicable to the rights, duties and conduct of men. Sailing ships, running steamboats and railroad trains, carrying the mails, operating telegraph lines, keeping up water-works and gas-works, carrying on distilleries, breweries, and running flouring-mills, are not prohibited on Sunday, we believe, anywhere in the civilized world, and seldom regulated any differently on Sunday than on a week day; and large manufactories, blast-furnaces, salt-works, oil wells, and other pursuits wherein heavy machinery is used, and where a stoppage is attended with loss or inconvenience, are seldom interfered with in their operations on Sunday by legal restriction.

The earliest regulation we find touching Sunday, as a civil institution, was an edict of Constantine, A. D. 321, which declared that " on the venerable day of the Sun, let the magistrates and people residing in cities rest, and let

all workshops be closed. In the country, however, persons engaged in the work of cultivation may freely and lawfully continue their pursuits, because it often happens that another day is not so suitable for grain-sowing or for vine-planting, lest by neglecting the proper moment for such operation the bounty of Heaven should be lost." This edict was modified by various provisions of the civil law, A. D. 326, 368 and 386. In the year 469 all legal proceedings were prohibited on Sunday. These regulations were adopted by the several rulers of the Heptarchy, continued after their union under Egbert, and subsequently confirmed by William the Conquerer, as a part of the common law. *Swann* v. *Broome,* 3 Burr. 1,595.

By an act of Parliament, A. D. 1552, 5 and 6 Edward VI. c. 3, it was declared that nothing in the Scriptures prescribed any certain day upon which christians should refrain from labor, and enacted that Sunday and certain other days should be observed as holidays, provided that, when necessity might require, it should be lawful "to labor, ride, fish, or work any kind of work." The king further ordered "that the lords of the council should upon Sundays attend to the public affairs of his realm, dispatch answers to letters for the good order of the state, and make full dispatches of all things concluded the week before." James I., in his Book of Sports, declared that " our pleasure is after the end of divine service; our good people be not disturbed, letted or discouraged from any lawful recreation." This regulation was confirmed by Charles I. By the statute 29 Charles II. c. 7, it was enacted that "no tradesman, artificer, workman, laborer, or other person whatever, shall do or exercise any worldly labor, business or work of their ordinary callings upon the Lord's Day, or any part thereof, works of necessity and charity only excepted." This statute, we believe, remains substantially the law of England to the present day, with

a tendency, however, to relax the stringency of former decisions. By this statute the sale of meat in public houses, and milk at certain hours, on Sunday, is not prohibited. 4 Bl. Com. 63.

In the United States, where religion can be neither opposed nor supported by law, and where Sunday, under the law, is viewed purely in a secular light, the tendency naturally is to relax the restrictions of the Sunday laws in all things which do not interfere with the rights of others, and do not annoy or discomfort the public generally. The present statute of this State, we believe, is substantially in harmony with the Sunday laws in the several States of the Union. Throughout the civil law from Constantine, or the common law and statutes of England from William the Conqueror, and the statutes of the several States of the Union, we have found no case which holds the performance of ordinary domestic services in a household on Sunday, or the performance on Sunday of the ordinary services necessary to carry on, in the usual manner, a hospital, almshouse, hotel or other public institution of the kind, to be within the statutory laws prohibiting labor on Sunday. All such services are uniformly held to be exceptions under the law. *Rex* v. *Cox*, 2 Burr. 785; *Rex* v. *Younger*, 5 T. R. 449; *The Commonwealth* v. *Nesbit*, 34 Pa. State, 398; *Flagg* v. *Inhabitants of Millberry*, 4 Cush. 243; *Bennett* v. *Brooks*, 9 Allen, 118; *Commonwealth* v. *Knox*, 6 Mass. 76; *Commonwealth* v. *Sampson*, 97 Mass. 407; *Doyle* v. *Lynn and Boston R. R. Co.*, 118 Mass. 195; *Crosman* v. *City of Lynn*, 121 Mass. 301.

There is a difference between a work which may be done on one day as well as another, and which is not a daily need, and a work necessary to supply a constant daily want. There is no necessity for working in a shop, ploughing a field, selling from a store, opening an office, going to the exchange or mart of commerce, or working

at any common labor or usual avocation, on Sunday; but there is a daily necessity for putting a house in order, cooking food, taking meals, drinking coffee or tea, smoking a cigar by those who have acquired the habit, or continuing any other lawful habit, on Sunday, the same as there is upon a week day; and whatsoever is necessary and proper to do on Sunday to supply this constant daily need, is a work of necessity within the fair meaning of the law under consideration.

In this State it has been held that manufacturing malt beer, gathering and boiling sugar-water to prevent its waste, receiving the verdict of a jury by a court, and gathering the fruits of the earth to prevent their decay and taking them to the market-place on Sunday, are works of necessity, within the meaning of the present act. *Crocket* v. *The State*, 33 Ind. 416; *Morris* v. *The State*, 31 Ind. 189; *Jones* v. *Johnson*, 61 Ind. 257; *Wilkinson* v. *The State*, 59 Ind. 416. In the last case, the true rule, we think, was laid down by HOWK, J., namely, that labor performed on Sunday, which is necessary, under any particular state of circumstances, for the accomplishment of a lawful purpose, is not a violation of the Sunday law. See, also, *Edgerton* v. *The State*, 67 Ind. 588, and *Turner* v. *The State*, 67 Ind. 559.

Keeping a hotel in this State on Sunday is not unlawful. Keeping a hotel on Sunday, in the same way that it is usually kept on a week day, is not unlawful. It follows, then, that if a hotel keeps a cigar stand, which is a part of its establishment, from which it sells cigars to its guests, boarders and customers, on a week day, to sell cigars from the same stand in the same way on Sunday is not unlawful. Indeed, we see no difference, legally, between the act of selling a cigar under such circumstances, and the act of furnishing a cup of tea or coffee, a meal of victuals, or supplying any other daily want, to a customer on Sunday for pay.

In this view of the case, it is clear that the evidence does not support the conviction.

The judgment is reversed, and the cause remanded, with instructions to sustain the motion for a new trial, and for further proceedings in accordance with this opinion.