## SHIPLEY *v.* STATE.

## Opinion delivered October 19, 1895.

SABBATH BREAKING—BURDEN OF PROOF.—One charged with Sabbath-breaking, who is shown by the state to have labored on Sunday in operating the pumps and fan of a coal mine to prevent the accumulation of water and gas in the mine, has the burden of proving that such work was one "of necessity."

WORK OF NECESSITY—SUFFICIENCY OF EVIDENCE.—A conviction of Sabbath breaking in operating the pumps and fan of a coal mine on Sunday will not be disturbed where the evidence was that the work was necessary to keep the mine from flooding and from being filled with gas, but it did not appear that the operation of the mine might not have been made practicable and remunerative, at a reasonable cost, without laboring on Sunday, by a different construction of the mine and by the use of improved appliances.

Appeal from Logan Circuit Court.

JEPHTHA H. EVANS, Judge.

*John H. Rogers* and *Ira D. Oglesby* for appellants.

1. The facts in this cause differ from those in 56 Ark. 124 in every particular, and falls within the doctrine announced in 33 Ind. 416, approved in the former case. The court correctly held in 56 Ark. 124 that the statute did not mean to prohibit the doing of every kind of work except household work of daily necessity, but "*that such labor, not in the discharge of household duties, as is a necessary incident to the accomplishment of a lawful purpose is not a violation of the statute.*" The operating of the pumps and fan was a necssary incident to a lawful purpose, without which the mine could not be operated at all. 56 Ark. 124; 33 Ind. 416; 31 Ind. 187; 31 Ark. 518; 8 S. W. 926; *Ib.* 927; 41 Am. Rep. 64; 26 *id.* 84. The word "necessity" has never received a very strict construction, and it has been said to cover everything which is morally fit and proper to be done under the peculiar circumstances of the case. 108 Mass. 195; 145 *id.* 353.

*E. B. Kinsworthy*, Attorney General, for appellee.

1. There was no testimony to show that this mine could not be so arranged that there would be no necessity for Sunday labor. The indictment is good. 56 Ark. 124; 97 Mass. 407.

2. The burden was on appellants to show the necessity. 56 Ark. 127; 27 N. Y. 334; 88 Ga. 787; 23 Ark. 393.

3. One cannot create a necessity for Sunday labor, and then plead the necessity. The burden was on appellants to show this work could not be avoided. When work is done on Sunday to save a week day, the courts hold that it is not a work of necessity. 62 N. H. 575; 112 Mass. 467; 58 N. H. 248; 79 Mass. 407; 30 Ind.

476.   The necessity must be an unforseen one, or one that could not reasonably have been provided against. 76 Ind. 310; 34 Mo. App. 124.

*Rogers & Oglesby*, for appellant, on motion for rehearing.

1.   It was error to refuse the fourth instruction. The defendants were entitled to an acquittal if, from the whole evidence, there arose a reasonable doubt as to whether or not the work done by them was a work of necessity.   The defendants fully met the *prima facie* case made by the state, and overcame the burden which the law imposed on them, whenever they introduced evidence sufficient to raise a reasonable doubt in the minds of the jury as to whether or not the work done was a work of necessity.   59 Ark. 391; 58 Miss. 778; 29 *id.* 267; 53 Miss. 423–4 ; 20 Ark. 166; 19 *id.* 143 ; 59 *id.* 391 ; Thompson, Trials, vol. 2, 1791 *et seq.*   The cases in 27 N. Y. 334 and 56 Ark. 124 are not in conflict with this doctrine.

2.   The doctrine announced by the court on the *burden of proof* is not sustained by principle or the adjudications of our courts.   It is only where the negative averment is particularly within the knowledge of defendant that he is required to prove it.   19 Ark. 146 ; 45 *id.* 298 ; 1 Gr. Ev. (12 ed.) 95, note 81 b and c; 67 Mass. 61.

WOOD, J.   Appellants were convicted of the crime of Sabbath breaking.   The proof for the state was that appellants labored, operating the pumps and fan of the Western Coal & Mining Company at their mine in Franklin county, Arkansas.   The defense was that the work alleged was of necessity.   The proof on behalf of appellants was, in substance, that the pumps and fan were adapted to the mine in which they were used ; that it was necessary to operate them on Sunday to prevent the

probable destruction of the mine, and to protect the lives
of the miners ; that the suspension of the pumps and
fan on Sunday would involve serious loss, delay and in-
convenience.   The testimony in detail explained how
these consequences would follow upon a failure to oper-
ate the pumps and fan on Sunday.

The state having shown that appellants labored on       *Burden of proof.*
the Sabbath day operating the pumps and fan, it then
devolved upon the defendants to show that such work
was of necessity, unless the state by its own proof had
shown such to be the case.   Whether the work proved
was a necessity, was a matter peculiarly within the
knowledge of defendants.   *Cleary* v. *State*, 56 Ark. 124;
*Fleming* v. *People*, 27 N. Y. 334.   The proof on behalf
of the state showed that the work done was necessary
to keep the mine from flooding with water, and from be-
coming dangerous by filling up with gas ; but it did not
show that defendants could not have reasonably em-·
ployed some other device, in the then condition of the
mine, that would have answered the same purpose.   Nor
did the state's proof show that by no ordinary prudence
could this mine have been constructed in a way to avoid
this Sabbath day labor.   Hence the burden was left
(after the state had shown that the work was done) upon
the defendants to make good their special defense.
Have they done so?

Courts in construing the term "necessity," as em-     *As to what is a "work of*
ployed in these Sunday statutes, have generally given it   *necessity."*
a liberal, rather than a literal, interpretation.   It is not
an absolute, unavoidable, physical necessity, that is
meant, but rather an economic and moral necessity.   2
Bish. Cr. Law, sec. 959; *Edgerton* v. *State*, 67 Ind.
588 ; *Hennersdorf* v. *State*, 25 Tex. App. 597 ; *McGat-
rick* v. *Wason*, 4 Ohio St. 566 ; *Commonwealth* v. *Knox*,
6 Mass. 76; *Flagg* v. *Inhabitants of Millbury*, 4 Cush.
243 ; *Wilkinson* v. *State*, 59 Ind. 416.

If there is a moral fitness or propriety for the work done in the accomplishment of a lawful object, under the circumstances of any case, such work may be regarded a necessity, in the sense of the statute. *Commonwealth* v. *Knox*, 6 Mass. 76; *Stone* v. *Graves*, 145 Mass. 353. But work on the Sabbath, which is apparently in violation of the law, is not morally fit or proper in any case, unless it appears that by no ordinary discretion or reasonable expense could such labor have been avoided.

Now, coal mining is among the most important and useful of all industries. It is a necessity in the manufacturing and commercial progress of the world. The legislature could not have contemplated the imposition of any restrictions upon this or any other lawful occupation; which would render it impossible or even impracticable. Nevertheless, it is the duty of those engaged in this or any other lawful enterprise to select and arrange the means and appliances incident thereto so as not to violate the law in their practical operation.

The proof nowhere shows that this mine was properly constructed. Nor does it show, either on behalf of the state or the defendants, that this Sabbath day labor of operating the pumps and fan might not have been avoided by a different construction of the mine, or by other appliances just as effectual; and that, too, without any unreasonable expenditure of time or money. One cannot negligently or willfully create the necessity which he pleads in his defense. The law declared by the lower court was as liberal to appellants as they could expect, and was in line with the opinion of this court in *Cleary* v. *State, supra.*

The *prima facie* case for the state was not overcome by proof on behalf of appellants, and the verdict of the jury was correct.

Affirm the judgment.

BATTLE, J. ' Among the alleged errors enumerated by appellants in their motion for a rehearing is that part of the opinion in this case in which it is said that, if the labor performed by them on the Sabbath was necessary, the necessity of its performance on that day was within their peculiar knowledge, and the burden was on them to show it. They contend that, if this labor was not a work of necessity on Sunday, the state ought to prove it, because the evidence necessary for that purpose was not peculiarly within their knowledge. The work done by them was performed in the operation of machinery to propel fans and pumps for the purpose of keeping a mine free from gas and water. They say that the state could have used the inspector, or superintendent of the mine, or any of its employees, "or indeed anyone familiar with the operation and necessity of a coal mine," to show whether or not this work was one of necessity, and hence this fact was not within their peculiar knowledge. To test the correctness of this contention it is necessary to refer to the rule upon this subject.

Mr. Greenleaf says: "Where the subject matter of a negative averment lies *peculiarly within the knowledge* of the other party, the averment is taken as true, unless disproved by that party. Such is the case in civil or criminal prosecutions for a penalty for doing an act which the statutes do not permit to be done by any persons, except those who are duly licensed therefor; as, for selling liquors, exercising a trade or profession, and the like. Here the party, if licensed, can immediately show it, without the least inconvenience; whereas, if proof of the negative were required, the inconvenience would be very great." 1 Greenleaf on Evidence, sec. 79.

As to negative averments Mr. Wharton says: "Where, in a statute, an exception or proviso qualifies the description of the offense, the general rule is that

the indictment should negative the exception or proviso. In such cases, when the subject of the exception is peculiarly within the defendant's knowledge, and the negative cannot be proved by the prosecutor, the burden of proving the affirmative may be on the defendant, as a matter of defence.   But another distinction is to be kept in mind.   It may be that the negative to be established is something which virtually imputes certain positive conditions to the defendant, as on indictments for false pretences, where the charge of untruth is equivalent to a charge of falsity, in which case the burden of proving the negative is on the prosecution ; and on an indictment for perjury, where to charge a defendant with swearing to a fact, not knowing it to be true, is equivalent to a charge of rash and false swearing, in which case the defendant's want of knowledge must also be shown by the prosecution.   On the other hand, where the negative involves no criminality on the part of the defendant, then the burden may be on him to prove the affirmative. Thus the burden of proving the defendant to be a 'traveler,' under the statutes prohibiting wearing of concealed weapons, is on the defence."   Wharton's Cr. Ev. (8 ed.) sec. 128.

In cases in which the defendants are indicted for selling liquor without license, Mr. Bishop explains the rule as follows :   "Must the negative averment, that the defendant was not licensed or otherwise authorized to make the sales be proved?   Now, in principle, as this negative matter is a part of the government's case against the defendant, it must in some way be made *prima facie* to appear at the trial.   But not all of every case is established by oral testimony, depositions and other documents.   Much is derived from presumption. One of the presumptions is that what is common in general prevails in the particular ; another, that a fact, the existence of which is once shown, continues.   There-

fore, where the general law withholds from the mass of the people the right to make the particular sale in controversy, and permits it only to exceptional persons, of everyone of whom it is certainly true that at some time he was not allowed to do it, the *prima facie* presumption is double: first, that the instance in controversy accords with what is general; and secondly, that, as at one time the defendant had no license, he has none now. Hence, if he has a license, he must show it. And this doctrine promotes alike convenience and justice; for it is troublesome, and it may be even impossible, to prove a negative, while, if the defendant has a license, he can readily produce it." Bishop's Statutory Crimes (2 ed.), sec. 1051.

The reason given by Mr. Bishop for the rule in the cases he was discussing is really the reason why the matter to be proved was in the peculiar knowledge of the defendant. As he is an exception in the mass of the people, it is to be presumed that the fact to be proved is more peculiarily within his knowledge. An illustration of this is the licensed liquor dealer. Another is *Wiley* v. *State*, 52 Ind. 516. In that case the defendant was indicted for carrying a concealed weapon, he not being a traveler. The court held that the burden was on him to prove that he was a traveler, and said: "We think the exception relates to the appellant personally, and is particularly within his knowledge. Besides, a majority of persons are not travelers. The presumption was, that the appellant was not a traveler, and if he desired to take himself out of the operation of the general rule, it was incumbent on him to make the proof." *United States* v. *Hayward*, 2 Gall. 485; *Rex* v. *Turner*, 5 Maule & S. 205.

In the case before us, the appellants claimed to be an exception to a rule. The statute makes it a public offense for anyone to labor on the Sabbath, unless the

labor performed is a work of charity or necessity. They claimed to be within the exception, because their labor was necessary to keep the mine in which they were working free from gas and water on Sunday, and thereby to preserve the mine, and make it a safe and fit place in which to work on Monday and succeeding days. Whether this be true or not depends on the locality of the mine, the extent it is subject to be filled by water and gas, the time and expense required to free it from the gas and water, and to preserve the walls. Without a knowledge of these facts, no one can tell whether it be necessary to work in or on the mines on the Sabbath in order to operate them at a profit on other days. These facts are peculiarly, not exclusively, within the knowledge of the appellants. Their observation, experience, and knowledge as to the mine, its construction, the extent to which it is exposed to gas and water, the use and capacity of machinery usually employed in operating it, presumably enabled them to prove with more facility than the state can whether their work on Sunday was a necessity. It imposed on them no hardship, and exposed them to no penalty to do so. In fact, they should not violate the Sabbath unless it appeared to them to be a necessity, and, when they do, ought to be able to prove that they come within the exception.

Appellants complain of this court misunderstanding an instruction to the jury which was asked for by them, and refused by the circuit court. It was as follows: "It is not necessary, in order for the defendants to be acquitted, that the evidence should satisfy the jury that the work done by the defendants was a work of necessity, but the jury should acquit them if there arises out of the whole evidence a reasonable doubt as to whether or not the work done by them was a work of necessity, as defined in the foregoing instructions." Under the evidence we deemed it unnecessary to notice it, as, under

the undisputed facts in the case, we thought the refusal to give it was not prejudicial to appellants.

Witnesses testified that the mine at which appellants labored on a Sunday was what is known as a "wet mine," and was exposed to gas; that it was necessary to use a pump and fan all the time in order to keep it in a safe condition; that, if the pump was not operated on Sunday, the inflow of water would be so great as to require the whole of Monday, and probably Tuesday, to pump it out, and the roof in some portions of the mine would be liable to fall in on account of the accumulation and effect of the water; and that, unless the fan was continually kept in motion, gas would accumulate, and it would be dangerous for laborers to enter the mine. And they further testified that a pump of sufficient capacity to pump out on Monday all the water accumulating on Sunday, and a fan capable of expelling all the gas on Monday by noon, could be procured, but the pump and fan already in use were sufficient for that purpose if operated on the Sabbath. But no witness testified that the walls and roof of the mine could not have been so constructed at a reasonable expense as to prevent them caving or falling in after being exposed to the water.

The whole effect of this evidence was to show that it was more profitable to use, on the Lord's day, the fan and pump already in operation, than to construct the walls and roof of the mine in such a manner as to prevent them falling in on account of the effects of the water, and to procure and to use a pump and fan of sufficient capacity to expel on Monday all the gas and water accumulating on the preceding Sunday. But this was not sufficient. If true, it does not prove that the labor performed by appellants was a work of necessity on Sunday. For, if the operation of the mine might have been made practicable and remunerative, at a reasonable cost, without laboring on Sunday, by the structure of

its walls and roofs, and use of improved appliances, then there was no necessity for work on the Sabbath. Labor cannot be lawfully performed on the Lord's day merely for the purpose of adding profit to the accumulation of a business already lucrative; for, if it could, all kinds of work might be a necessity, and it would be a sufficient excuse for labor on Sunday to say that it was convenient and profitable; and all barriers to the desecration of the Sabbath would be thereby broken down.

We deem it unnecessary to add anything further to what has been said in the opinion heretofore delivered in this case.

The motion of appellants is denied.

[As to what constitutes Sunday labor, see note to *Quarles* v. *State*, (Ark.) 14 L. R. A. 192.—Rep.]