SIDDONS *v.* EDMONSTON.

RICHARDS *v.* UNITED STATES EX REL.
EDMONSTON.

DISTRICT OF COLUMBIA; POLICE POWER; SUNDAY; CLASS LEGISLATION;
BASEBALL; STATUTES; CONSTRUCTION.

1. Section 16, art. 16, of the police regulations of the District of Columbia,

forbidding certain public exhibitions on Sunday, is within the police
powers conferred upon the commissioners of the District of Columbia
by sec. 2 of the joint resolution of Congress of February 26, 1892
(27 Stat. at L. 394), authorizing them to make such reasonable and
usual police regulations as they may deem necessary for the protec-
tion of the lives, limbs, health, comfort, and quiet of all persons, and
the protection of all property within the District, especially in view
of the act of Congress of June 15, 1878 (20 Stat. at L. 134, chap.
213), forbidding the shooting or carrying of guns on Sunday; the
act of July 29, 1892 (27 Stat. at L. 324, chap. 320), imposing a fine
for disturbing a religious congregation; the act of February 25,
1897 (29 Stat. at. L. 594, chap. 315), requiring billiard and pool rooms
to be closed on Sunday; the act of March 3, 1899 (30 Stat. at L.
1013, chap. 418), forbidding the sale of liquor on Sunday; and secs.
446, 1304, and 1389, D. C. Code (31 Stat. at L. 1259, 1395, 1404,
chap. 854), classing Sunday with legal holidays.

2. Police regulations enacted by the commissioners of the District of
Columbia in pursuance of authority given them by Congress will not
be disturbed as class legislation unless the classification is palpably
arbitrary, and the test is whether there is substantial difference be-
tween the classes covered by the prohibition and those excepted from
its operation.

3. The class legislation clause of the 14th Amendment of the Constitution
of the United States, even assuming that it applies to the District of
Columbia, as it does not, is not violated by sec. 16, art. 16, of the
police regulations of the District of Columbia, forbidding any own-
er, proprietor, tenant, or other person in any theater or other public
place of amusement, on Sunday, to permit or take part in any public
exhibition of any entertainment, play, opera, circus, animals, gymnas-
tics, games, dance or dances, or vaudeville performance of any kind,
except the exhibition of moving or other pictures, vocal or instrumen-
tal concerts, or singing by a singer or singers, artist or artists, not in
character costume, lectures and speeches,—the same being impartial
within the classes named.

4. A baseball game is within the contemplation of sec. 16, art. 16, of the
police regulations of the District of Columbia, forbidding any owner,
proprietor, tenant, or other person in any theater or other public place
of amusement, on Sunday, to permit or take part in any public exhi-
bition of any entertainment, play, opera, circus, animals, gymnastics,
"game," dance, or vaudeville performance.

Nos. 2728 and 2729.    Submitted October 7, 1914.    Decided November 5,
1914.

HEARING on appeals by defendants in consolidated actions from a decree of the Supreme Court of the District of Columbia restraining defendants in No. 2728 from interfering with plaintiff in conducting baseball games in his park on Sunday and from a judgment directing defendant in No. 2729 to issue a license to plaintiff for such days of the week as he might request.

*Reversed.*

The COURT in the opinion stated the facts as follows:

The first of these appeals is from a decree in the supreme court of the District restraining the defendants, Frederick L. Siddons, Oliver P. Newman, and Chester Harding, their officers, agents, and representatives, from interfering with Samuel S. Edmonston, Jr., the plaintiff, appellee here, in conducting baseball games in a park situated in the northeastern part of this city, and of which the appellee is lessee, provided that he apply for a license under the general license law to conduct said games. The decree further recites that the District of Columbia has no authority, under the act of Congress giving it power to pass police regulations, to pass a regulation interfering with public baseball games on Sunday. The second appeal is from a judgment in the same court directing the appellant William P. Richards to issue to the appellee, as lessee of said baseball park, a license for such days of the week as he may request, he to pay in advance the license fee required by law.

The case made by the pleadings, briefly stated, amounts to this: The appellee, being the lessee of said athletic park, applied for a license to have a public game of baseball played on Sunday (to which admission fees were to be charged), basing his right to the license upon par. 24 of sec. 7 of the act of July 1, 1902 (32 Stat. at L. 625, chap. 1352), providing, among other things, "that owners or lessees of grounds used for horse racing, tournaments, athletic sports, baseball, football, polo, golf, and kindred games, or where feats of horsemanship are performed, to which admission fees are charged or which are used for profit or gain, directly or indirectly, shall pay a li-

ccnse tax of twenty dollars per week or five dollars per day."
The application was refused, the refusal being based upon sec.
16 of article 16 of the police regulations of the District, which
reads as follows:

"No owner, proprietor, lessee, tenant, or other person shall
on the first day .of the week, commonly called Sunday, in any
theater or other public place of amusement, permit, allow, or
take part in any manner in any public exhibition of any en-
tertainment, play, opera, circus, animals, gymnastics, game,
dance or dances, or vaudeville performance of any kind, except
the exhibition of moving or other pictures, vocal or instrumental
concerts, or singing by a singer or singers, artist or artists not
in character costume, lectures, and speeches: *Provided,* That
nothing herein contained shall be held or construed to change,
abrogate, or annul the regulations in force for the protection
of the public decency, all of which shall be applicable to the
performances allowed under the terms of this regulation."

*Mr. C. H. Syme,* Corporation Counsel, for the appellants.

*Mr. D. W. Baker* and *Mr. William E. Leahy* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

The jurisdiction of the court to grant the relief prayed is not.
denied, provided it be found, as matter of law, that the appellee
was entitled to the license. The sole question with which we
are concerned, therefore, is whether he was entitled to such
license.

Sunday legislation has been known to the world for more
than fifteen centuries, having originated in Rome in A. D. 321,
when Constantine the Great issued an edict commanding all
judges and inhabitants of cities to rest on that day. *Carver*
v. *State,* 69 Ind. 61, 35 Am. Rep. 205; *Campbell* v. *Interna-
tional Life Assur. Soc.* 4 Bosw. 298. Such laws were passed
at an early day in England, and early legislation in this coun-
try on the subject was based upon the comprehensive statute of

29 Car. II. chap. 7. *Rodman* v. *Robinson,* 134 N. C. 503, 65 L.R.A. 682, 101 Am. St. Rep. 877, 47 S. E. 19. But, irrespective of any mandate of the law, the Christian world, of which this country is a part (*Church of the Holy Trinity* v. *United States,* 143 U. S. 457, 465, 36 L. ed. 226, 230, 12 Sup. Ct. Rep. 511), has by common consent set apart the first day of the week as a day of rest, reflection, and devotion. In our own land State legislatures have taken cognizance of the traditions and customs of the people in thus setting apart Sunday, by enacting laws relating to the observance of that day, the theory of such laws being that they tend to promote the order and advance the moral and physical well-being of those affected. Viewed in their civil aspect, these laws have been sustained with uniformity as a valid exercise of the police power. Mr. Justice Field, in *Ex parte Newman,* 9 Cal. 502, referring to a statute in California relating to Sunday, said: "Its requirement is a cessation from labor. In its enactment the legislature has given the sanction of law to a rule of conduct, which the entire civilized world recognizes as essential to the physical and moral well-being of society. * * * The prohibition of secular business on Sunday is advocated on the ground that by it the general welfare is advanced, labor protected, and the moral and physical well-being of society promoted." In *Hennington* v. *Georgia,* 163 U. S. 299, 41 L. ed. 166, 16 Sup. Ct. Rep. 1086, a law of that State prohibiting the running of freight trains on any railroad in that State on Sunday was sustained as a valid exercise of the police power of the State. The court said that, both upon principle and authority, the statute "is, in every substantial sense, *a police regulation* established under the general authority possessed by the legislature to provide, by laws, for the well-being of the people." In *District of Columbia* v. *Robinson,* 30 App. D. C. 283, 12 Ann. Cas. 1094, this court, through Mr. Justice Van Orsdel, said: "Recognizing that law can raise no higher standard of morals for the government of the individual than society itself, in the aggregate, has attained, it is only natural that the legislature should select, as a day for general cessation from labor, the same day that society, by common

consent, has observed for centuries, whether that observance be
the result of religious belief or otherwise." In *Petit* v. *Minnesota,* 177 U. S. 164, 44 L. ed. 716, 20 Sup. Ct. Rep. 666,
involving the validity of a statute of Minnesota relating to the
observance of Sunday, the court said: "We have uniformly
recognized State laws relating to the observance of Sunday as
enacted in the legitimate exercise of the police power of the
State.   *   *   *   Well-nigh innumerable decisions of the State
courts have sustained the validity of such laws."

But, it is insisted, the municipality was without authority to
pass such regulations.  The appellants answer this contention
by referring to sec. 2 of the joint resolution of Congress of
Feb. 26, 1892 (27 Stat. at L. 394), which provides "that the
commissioners of the District of Columbia are hereby author-
ized and empowered to make and enforce all such reasonable
and usual police regulations, in addition to those already made
under the act of Jan. 26, 1887, as they may deem necessary for
the protection of lives, limbs, health, comfort, and quiet of all
persons, and the protection of all property, within the District
of Columbia."  Section 1 of this resolution ordained that all
licenses issued by the commissioners to proprietors of theaters
or other public places of amusement should be terminated un-
less persons holding such licenses should, within ten days after
notice, comply with such regulations as might be prescribed for
the public safety by the commissioners.  The act of January 26,
1887 (24 Stat. at L. 365, chap. 45), to which reference is made
in sec. 2 of the joint resolution above quoted, was for the fur-
ther protection of property from fire and safety of lives in the
District.  It thus appears that Congress became convinced that
its previous grants of police power to the commissioners were
inadequate, and that the interests and welfare of the people of
the District required that the commissioners, who presumably
were in closer touch with local conditions than Congress, should
be clothed with power to enact all reasonable and usual police
regulations that they might deem necessary "for the protection
of lives, limbs, health, comfort, and quiet of all persons and the
protection of all property within the District of Columbia."

It would have been difficult, indeed, for Congress to have used more comprehensive words than this grant of power contains.

We have seen that in *Hennington* v. *Georgia, supra,* the Sunday observance statute there involved was denominated *a police regulation* having for its object the protection of the health and morals and the promotion of the general well-being of the people of the State. And it has been uniformly ruled that general grants of power to municipalities similar to the grant here in question authorized the passage of Sunday-observance ordinances. Indeed, until the contrary view was advanced, we had not supposed the question longer open to controversy. *Theisen* v. *McDavid,* 34 Fla. 440, 26 L.R.A. 234, 16 So. 321; *Nashville* v. *Linck,* 12 Lea, 499; *Lovilia* v. *Cobb,* 126 Iowa, 557, 102 N. W. 496; *State* v. *Welch,* 36 Conn. 215; *Gabel* v. *Houston,* 29 Tex. 336; *Karwisch* v. *Atlanta,* 44 Ga. 204; *St. Louis* v. *Cafferata,* 24 Mo. 94; *State* v. *Cowan,* 29 Mo. 330; *Springfield* v. *Richter,* 257 Ill. 578, 101 N. E. 192, and *Clinton* v. *Wilson,* 257 Ill. 580, 101 N. E. 192; *Sherman* v. *Paterson,* 82 N. J. L. 345, 82 Atl. 889; 2 Dill. Mun. Corp. sec. 719; Cooley, Const. Lim. 6th ed. 725; Harris, Sunday Laws, secs. 2 and 3. In each of the cases above cited, ordinances or regulations relating to the observance of Sunday, passed under general grants of police power to the various municipalities, were upheld as within the purview of those grants. In view of the number and uniformity of those decisions, we think it may be assumed that the regulation in question is a usual police regulation, and that if its provisions are reasonable, and not in conflict with some law of Congress, its passage is authorized by said act of 1892.

The regulation is not in conflict with, but rather in aid of, the laws in force in this jurisdiction. The act of June 15, 1878 (20 Stat. at L. 134, chap. 213), forbids the shooting or carrying of guns on Sunday. The act of July 29, 1892 (27 Stat. at L. 324, chap. 320), imposes a fine for disturbing a religious congregation. The act of February 25, 1897 (29 Stat. at L. 594, chap. 315), requires billiard and pool rooms to be closed on Sunday. The act of March 3, 1899 (30 Stat. at L. 1013, chap. 418), forbids the sale of liquor on Sunday. Sections 446,

1304, and 1389 of the Code [31 Stat. at L. 1259, 1395, 1404, chap. 854], class Sunday with legal holidays. It thus appears that Congress has recognized what all other legislative bodies have recognized; namely, that Sunday is a day of rest. While, in the instance noted, it has said to the people of the District that they shall refrain from doing certain things on that day, it has delegated to the commissioners of the District general power upon the subject, realizing, as we have suggested, that the commissioners, being in closer touch with local conditions, would be in a better position to judge as to what police regulations would be necessary for the protection of the health, comfort, and quiet of the people of the District.

It is further suggested that the regulation in question is class legislation, not operating alike upon persons in the same character of business, and hence, it is said, forbidden by the 14th Amendment of the Constitution. The prohibition in this Amendment, to which appellee refers, applies to the States, and not to the District of Columbia. *District of Columbia* v. *Brooke,* 214 U. S. 138, 53 L. ed. 941, 29 Sup. Ct. Rep. 560. But assuming, *arguendo,* that the prohibition may be implied from our form of government, we find nothing in the regulation warranting the conclusion that it is not uniform in its operation. On the contrary, we think its operation is impartial within the classes, affecting alike all similarly situated. The supreme court has said again and again that the power of classification is essential, and may be exercised even under the 14th Amendment, and that a wide range of discretion necessarily is reposed in those exercising the power. Congress authorized the commissioners of the District to enact such usual police regulations as they might deem necessary to effectuate the ends desired, and, unless their classification was palpably arbitrary, it should not be disturbed. *Petit* v. *Minnesota,* 177 U. S. 164, 44 L. ed. 716, 20 Sup. Ct. Rep. 666. That case involved a statute of Minnesota prohibiting Sunday labor, excepting works of necessity or charity, and declaring that the keeping open of a barber shop on Sunday for the purpose of cutting hair and shaving beards should not be considered a work of necessity or charity. The

supreme court of the State, in sustaining the law, had taken judicial notice of the custom of barbers to keep their shops open in the evening as well as in the day, and especially on Saturday afternoons and evenings, and also of the habit of many men to postpone getting shaved until Sunday, observing that, if shops were to be permitted to be kept open on Sunday, employees would ordinarily be deprived of rest during half of that day. The force of the distinctions suggested were recognized in the opinion of the Supreme Court of the United States. In *Sherman* v. *Paterson,* 82 N. J. L. 345, 82 Atl. 889, the court said: "The fact that the municipal authorities, to whom the power was thus delegated, have seen proper in their discretion to single out certain occupations, the prosecution of business in which upon Sunday may be particularly objectionable and offensive, does not operate as an unreasonable or illegal discrimination against those engaged in such occupations." In *Clinton* v. *Wilson,* 257 Ill. 580, 101 N. E. 192, the ordinance prohibited persons from keeping open their places of business or performing their daily labor on Sunday, but did not embrace persons who conscientiously observed some other day, or cases of necessity or charity,—hotels, eating houses, drug stores, tobacco stores, barber shops, and livery stables. It was held that these exceptions did not render the ordinance invalid, the court being unable to say that the classification so made was unreasonable. Such is the general effect of all the cases.

The object and scope of the regulation under review, as previously suggested, was to insure to the people of the District their day of rest, that their moral and physical well-being might be advanced. Having in mind the end desired, can it be seriously contended that the classification in the regulation is so palpably arbitrary as to amount to an unreasonable discrimination against those within the classes? Each of the prohibited things is purely secular in character and out of harmony with the atmosphere of Sunday. In short, each would constitute a false note and jar upon the sensibilities of those seeking the rest and quiet to which they are entitled. Nor do we think the exceptions are so palpably unreasonable as to warrant judicial

interference.  We cannot say that it was an abuse of the dis-
cretion reposed in the commissioners for them to find that an
exhibition of moving or other pictures, vocal or instrumental
concerts, singing by those not in character costume, and lec-
tures and speeches, were not so objectionable as to be forbidden.
The test is whether there is substantial difference between the
classes prohibited by the regulation and those excepted from its
operation.  *Springfield* v. *Richter,* 257 Ill. 578, 101 N. E. 192
and *Clinton* v. *Wilson, supra; Theisen* v. *McDavid,* 34 Fla.
440, 26 L.R.A. 234, 16 So. 321; *Nashville* v. *Linck,* 12 Lea,
499.  We think the regulation meets this test.

Another contention of appellees is that the regulation was
not intended to embrace a baseball game.  This contention is
obviously untenable.  The regulation is aimed at any public
exhibition "of any entertainment, play, opera, circus, animals,
gymnastics, *game,*" etc.  The court will take judicial notice of
the fact that baseball is very much of a game.  Moreover, one of
these games played within the limits of the city would cause
as much or more interference with the quiet observance of Sun-
day than any other amusement embraced within the regulation.
This the commissioners well knew.  There is therefore every
reason for giving the regulation the reasonable interpretation
which its language permits.

It appearing that the commissioners, acting within the scope
of the authority delegated to them by Congress, passed the
regulation before us, it follows that appellee was not entitled to
a license to violate that regulation.  The judgments will there-
fore be reversed, with costs, and the causes remanded for fur-
ther proceedings.                      *Reversed and remanded.*

Thereafter, on motion of the appellee to make the decree in
No. 2728, and the judgment in No. 2729, final, so as to enable
him to apply for the allowance of an appeal to the Supreme
Court of the United States, and a writ of error from that court,
respectively, this court amended its decree in No. 2728, so as to
reverse the decree of the lower court in that cause, and remanded
the cause with directions to vacate the decree granting the in-

junction and to dismiss the appeal; and amended its judgment in No. 2729, so as to reverse the judgment of the lower court and remanded the cause with directions to dismiss the petition for the writ of mandamus.

The appellee then applied to this court for the allowance of an appeal to the Supreme Court of the United States in No. 2728, and for the allowance of a writ of error from that court in No. 2729. On January 4, 1915, the application was denied.