### E. A. Lane v. The State.

No. 1848. Decided October 23, 1912.

**1.—Sunday Law—Work of Necessity.**

Where the contract contained a stipulation that the owners of the build-ing which was to be constructed by the contractor would pay him $50 per day for each and every day prior to January 1, 1911, that he should be able to complete the building, and also a stipulation that the contractor would pay to the owner $50 per day for each and every day subsequent to said January 1, that it took to complete the building, and that there-after the building was not completed as stipulated and the contractor worked his men on Sunday, one of whom was arrested for a violation of the Sunday Law, he could not claim exemption from punishment on the ground that he was performing a work of necessity. Davidson, Presiding Judge, dis-senting.

**2.—Same—Voluntary Contract.**

No person can voluntarily enter into a contract, and thereby create the necessity of laboring on Sunday in violation of our Sunday Law.

Appeal from the County Court of Wichita. Tried below before the Hon. C. B. Felder.

Appeal from a conviction of a violation of the Sunday law for laboring on Sunday; penalty, a fine of $10.

The opinion states the case.

*Huff, Barwise & Bullington,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State. Cited United States v. Kirby, 7 Wall. (19 Law Ed.), 482.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of violating the Sunday law, his punishment being assessed at a fine of $10.

The information and complaint contain quite a number of counts presenting the case in the allegations in every conceivable form. The facts show there was a contract for the erection of a certain building. Among other stipulations in that contract is this: "It is further agreed that should the contractors fail to finish and complete the work embodied in their contract by the time agreed upon, they shall pay to or allow the owners by way of liquidated damages the sum of fifty dollars per day for each and every day the said work shall remain uncompleted. It is further agreed that should the contractors complete the work embodied in their contract before the time agreed upon, the owners shall pay to the contractors as a premium the sum of fifty dollars per day for each and every day the said works are completed prior to the time agreed upon. In either event the penalty or premium shall be completed after all credits of time lost are allowed as provided for in article 7."

Article 7 provides that: "Should the contractor be obstructed or delayed in the construction or completion of the work by the act, neglect or delay of the owner or the architects, or by any other contractor employed by the owners upon the work, or by any damage which may be done by fire, lightning, earthquake or cyclone, or by an abandonment of the work by the employes through no fault of the contractor, then the time herein fixed for the completion of the work shall be extended," etc. This contract was dated April 25, 1910. The building was to be completed on January 1, 1911. The evidence shows beyond any question, and is not a disputed fact, that the party had not been able to complete the building by the first of January, 1911, according to the contract; and that the work was not completed at the time appellant was charged with working on the building, which was January 1, 1911, it being Sunday. On that day appellant was working on the building under order of his superior to complete the contract at the time he was arrested for working on said Sunday. At the time of the trial, which was in the latter part of January, 1911, the work on the building was still

incomplete, and the parties were still at work trying to finish it. It is further part of the evidence that through the supervision of the building appellant was called to work by the party in charge of the building, and that was the occasion of his working on this Sunday, and that they were losing fifty dollars a day for every day they failed to complete the building, and that the owners were pushing it to get the building completed, as they were losing one hundred dollars a day rent in addition to the fifty dollars loss by the other parties. The contract was between the Texas Building Company on one hand and Kemp and Kell on the other. Mr. Tidwell, the above mentioned assistant supervisor, testified as a State witness, and stated, among other things, that appellant was working as carpenter, doing various jobs about the building, and they were trying to rush the building in every way possible, and that it was absolutely necessary that the Western Union Company should move in. He further stated: "If it had not been for the fact that my company, the Texas Building Company, was losing fifty dollars a day, that the conditions were extraordinary I would not have put the defendant, E. A. Lane, at work on that day, and the defendant, E. A. Lane, would not have been at work on that day. It is a fact that in order to close this contract and comply with the terms of the contract that we had been working the men at nights on this job." He further states: "We worked the men at night all along during the construction of the job. I said that all along while the job was in course of construction that we worked the men at night —not every night, but off and on. I did not work the men the next Sunday after this occurrence; we had not finished the building next Sunday." It is further shown the reason they were not at work the next Sunday was because the men had all been arrested for working on this particular Sunday and were prosecuted, this conviction arising under one of the prosecutions. He also states this was not the first Sunday that work had been done on the building, but he could not say how many other Sundays they had worked without looking the matter up, but several Sundays; that they worked a night shift during the month of September off and on, and had worked over nights ever since, and worked at nights all during the month of October, and through the month of November, and also worked at nights during the month of December.

The deputy sheriff testified that he saw the parties working and arrested them on the evening of this particular Sunday when and where he saw them working.

It is not thought necessary to go into a detail of all this testimony. It is clear that the parties regarded it as a work of necessity, under the facts stated, that is, that they were losing fifty dollars a day, and one hundred dollars rent, and it is also a fact uncontradicted that the parties who had rented the building were put to a great inconvenience, and were pushing the builders in order to get in and

occupy the house. It seems to have been a large building, and was to be occupied by banking concerns and telegraph and other concerns of that character.

Appellant's contention, under this state of facts, was that this was a work of necessity which exempts him from prosecution under the statute. The statute provides that any person who shall hereafter labor or compel or force or oblige his employe, workmen or apprentice to labor on Sunday, etc., shall be fined not less than ten dollars nor more than fifty dollars. This statute by the succeeding article exempts from punishment those who do work of "necessity or charity." There are quite a number of other exemptions mentioned which are made statutory necessities. The Legislature did not see proper to define what is meant by the term "necessity" or "charity;" that is, that body did not define the word "necessity." It mentions quite a number of things which are regarded as necessities, but did not give a definition of the general term itself. What is "necessity" under the Sunday law has been the subject of many decisions, and they are not altogether harmonious. It has been said that the word "necessity" means (1) irresistible force; (2) inevitable consequence. It has been further held that these are not the true meanings when used in a law touching the voluntary conduct of men. In that sense it means being necessary; something that is necessary. In Carver v. State, 69 Ind., 61, it was said, in giving a definition of "necessity" that it means: "The necessities of our nature; the necessaries of life. Habit and desire create necessities, but nature requires only necessaries. Sometimes the word 'necessity' means no more than 'occasion,' or that which gives rise to something else. Worchester. We are not to seek the physical, metaphysical, philosophical, scientific, moral, or theological meaning of the word 'necessity,' but its legal meaning, as applicable to the rights, duties and conduct of men. Sailing ships, running steamboats and railroad trains, carrying the mails, operating telegraph lines, keeping up waterworks and gasworks, carrying on distilleries, breweries, and running flouring mills, are not prohibited on Sunday, we believe, anywhere in the civilized world, and seldom regulated any differently on Sunday than on a weekday; and large manufacturies, blast furnaces, saltworks, oil wells, and other pursuits wherein heavy machinery is used, and where a stoppage is attended with loss or inconvenience, are seldom interfered with in their operations on Sunday by legal restriction."

In Words & Phrases, vol. 5, p. 4729, we find this: "The term 'necessity,' as employed in the Sunday statutes, is generally given a liberal rather than a literal interpretation by the courts. It is not an absolute, unavoidable, physical necessity that is meant, but rather an economic and moral necessity. Flagg. v. Inhabitants of Millbury, 58 Mass. (4 Cush.), 243, 244; Commonwealth v. Knox, 6 Mass., 76, 77; Shipley v. State, 32 S. W. Rep., 489, 490, 61 Ark.,

216; McGatrick v. Wason, 4 Ohio St., 566, 573; Wilkinson v. State, 59 Ind., 416, 423, 26 Am. Rep., 84; Ungericht v. State, 21 N. E. 1082, 119 Ind., 379, 12 Am. St. Rep., 419; Yonoski v. State, 79 Ind., 393, 396, 41 Am. Rep., 614; Mueller v. State, 76 Ind., 310, 313, 40 Am. Rep., 245; Western Union Tel. Co. v. Henley, 54 N. E., 775, 777, 23 Ind. App., 14; Johnston v. People, 31 Ill., 469, 473; Hammons v. State, 59 Ala., 164, 170, 31 Am. Rep., 13; People v. Cayuga County Sup'rs, 50 N. Y. Supp., 16, 20, 22 Misc. Rep., 616; Ex parte Kennedy, 58 S. W., 129, 130, 42 Texas Crim. Rep., 148, 51 L. R. A., 270. Nor need the necessity be dangerous to life, health or property, which is beyond human foresight or control. On the contrary, the necessity may grow out of, or be incident to, a particular trade or calling, and yet be a work of necessity, within the meaning of the Act. It is not the design of the law to impose onerous restrictions upon, or add burdens to, any lawful trade or business. Edgerton v. State, 67 Ind., 588, 592, 33 Am. Rep., 110; Hennersdorf v. State, 8 S. W., 926, 927, 25 Texas App., 597.

" 'Necessity,' within the Sunday law, prohibiting work on Sunday, except work of charity or necessity, is totally incapable of any absolute definition. What is a mere luxury or perhaps entirely useless or burdensome to a savage may be a matter of necessity to a civilized man. What may be a mere luxury or pleasure to a poor man may be a necessity when he has grown rich. Necessity, therefore, can itself be only approximately defined. The law regards that as necessary which the common sense of the country, in its ordinary modes of doing its business, regards as necessary. By this test, the business of keeping livery stables for the care of people's horses is a necessary employment in large towns, and, of course, this requires some work and attention on Sundays; and this may be performed, to the extent of the necessity, by the ordinary means belonging to the business. By this test, also, iron and glass are necessaries of life, and they can not be obtained without some work being done on Sunday, if the business is to be performed according to the ordinary skill and science of the country. The law never inquires whether iron and glass generally, or in such large quantities, are really necessary, in the strictest sense of the word, or whether it is not possible to improve the art so that Sunday may not need to be violated. This is not the province of the law, but of individual enterprise and science. The law therefore does not condemn those employments which society regards as necessary, even when they encroach on the Sabbath, if, according to the ordinary skill of the business, it is necessary to do so. Commonwealth v. Nesbit, 34 Pa. (10 Casey), 398, 409."

It has also been held that the question in each case must be decided according to the circumstances, and it is therefore more a question of fact than of law whether the labor done in the particular case is to be deemed of necessity or not. Ungericht v. State, 21 N. E.

1082, 1083, 119 Ind., 379, 12 Am. St. Rep., 419. And all the authorities seem to agree that an absolute and physical necessity is not meant or required. Johnson v. People, 31 Ill. App., 469. Numerous cases and illustrations are cited in the cases decided throughout the Federal Union that are too voluminous to notice or upon which to comment. The Hon. Allen G. Thurman, when Chief Justice of the Supreme Court of Ohio, rendered an opinion for that court which was unanimous, and discussed this very question at length. The opinion is too long to be here quoted in full. He says, among other things:

"But it is a task of much difficulty and one that a court ought not unnecessarily to attempt, to draw a line that shall clearly distinguish works of necessity from those that are not.

"It is easy to say, that to feed the hungry, to attend the sick, and to rescue a fellowbeing from suffering or danger, are works of both necessity and charity; but it would not do to say that none others are. For the personal wants or safety of the human species does not mark the limit. It is a work of necessity and charity to take care of and preserve a dumb brute, as well as a human being; and no one would imagine that the statute is violated by feeding one's cattle, or drawing one's sheep from a pit, on the Sabbath day.

"But it is very clear that we have not yet reached the limit, and that it will not do to hold that nothing is a work of necessity that is not performed in the care or for the preservation of animal life. The care or preservation of property, though inanimate, may be a work of necessity. If a house should take fire on the Sabbath, it would obviously be lawful to save it by labor. It would be equally so to save a crop from the effects of bad weather, when to omit doing so would result in its loss or material injury—or, for a merchant to save his goods; a manufacturer or mechanic his wares; a seaman his vessel; or, in a word, any man his property in danger of destruction or injury, on the Sabbath day.

"Nor will it do to limit the word 'necessity' to those cases of danger to life, health or property, which are beyond human foresight or control. On the contrary, the necessity may grow out of, or indeed be incident to a particular trade or calling, and yet be a case of necessity within the meaning of the act. For it is no part of the design of the act to destroy, or impose onerous restrictions upon, any lawful trade or business; and hence, under a similar statute, it has been held in a sister state, that it is lawful to keep a blast furnace at work on Sunday, because it is a work of necessity. So, too, it has been held that, under special circumstances, a mill may grind on that day; and I think it will hardly be questioned that a gas company may supply gas; a water company water, and a dairyman milk, to their respective customers, on that day.

"Other illustrations might be given, but these are quite sufficient to show that the necessity spoken of in the statute is not an absolute,

uncontrollable necessity only; but may be necessity created by the exigencies of society or trade. If nothing but absolute necessity was intended it would, in general, be unlawful to prepare a meal on the Sabbath; because, it might without difficulty be previously prepared, or because most people might safely enough fast for twenty-four hours. It would be equally unlawful to supply us with gaslight, for we might use candles previously laid in, or retire to our beds at twilight. And so many things, by all men admitted to be lawful, would be brought within the prohibition of the statute."

It has been held also that the garner of grain that was overripe is a necessity, and many exigencies might arise that could not be met by any prudent forethought or act on the part of the accused party. Here we have a carpenter laboring under the orders of the man having supervision of the building. It is shown that the parties would suffer irreparable injury under the contract if the building was not completed; that the loss to the parties concerned, builder and the party having the building erected, amounted to one hundred and fifty dollars a day, and to save themselves from these heavy losses the defendant and the other hands were required to work on Sunday. If the building had been on fire there could have been no question of appellant and his coworkers having the right, under the law of necessity, to assist in saving the building from destruction. It occurs to us that by parity of reason, especially from the standpoint of irreparable loss of property, that appellant would be justified in doing what he did on this particular Sunday under the doctrine of "necessity." There may arise sometime, and is a fact as well as law, that a thing which may not be one of necessity under one state of facts, would be a necessity under another state of facts. It would be unlawful for a barber to follow his business generally on Sunday, shaving and cutting hair, yet it would not be a violation of the law for him to shave a corpse for burial. Many instances of this sort might be cited and illustrations mentioned, but the general drift of authority, we think, sustains appellant's proposition under the facts of this case that there was not a violation of the law, and the rule of necessity can and ought to be successfully invoked by him on this record.

I am therefore of opinion the judgment ought to be reversed and cause remanded, but my brethren not agreeing with me, affirm the judgment, and I dissent.

HARPER, JUDGE.—I concur in the principles of law laid down by Presiding Judge Davidson in the foregoing opinion, but do not concur that the facts in this case bring it within the rules of law as therein announced. The Texas Building Company, in April, 1910, entered into a contract to erect the Kemp and Kell building, in Wichita Falls, and contracted to complete the building by January 1, 1911. The contract contained a stipulation that the owners

of the building would pay the contractors $50 per day for each and every day prior to January 1 that they should be able to complete the building, and a stipulation that the contractors would pay to the owners $50 per day for each and every day. subsequent to January 1 it took to complete the building.   January 1 the building was not completed, and thereafter the contractors worked their men on Sunday, ostensibly to save the $50 per day contracted to be paid.   But was it in effect a saving?   The evidence shows that they paid double wages on Sunday and counting the number of men employed the extra pay allowed for Sunday work would amount to more than $50 per day, consequently the work on Sunday effected no saving for the contractors.   The evidence does not show that emergency or urgency that would bring it within the definition . of "necessity" as laid down in the opinion of our presiding judge. The State has an interest in the lives and health of each and all its citizens, and the ablest writers say and the best thought of our day agree, that human experience has demonstrated that days of rest from their ordinary toil are necessary and for the best interest of the human race.   The entire civilized world recognizes this in its laws, and that these days of rest are essential to the physical and moral well-being of society, and we can not lend our sanction to a violation of this law except in cases of absolute necessity.

I am therefore of the opinion that the judgment of the trial court should be affirmed.

PRENDERGAST, JUDGE.—No person can voluntarily enter into a contract and thereby create the necessity of laboring on Sunday in violation of our Sunday laws.   If this were so the law could be set aside by agreement.   This can not be done.   I concur with Judge Harper that this judgment should be affirmed, and it is so ordered.

*Affirmed.*