## MUTUAL LIFE INS. ASS'N OF TEXAS v. LILLARD. (No. 2989.)

Court of Civil Appeals of Texas. Amarillo. April 4, 1928.

Rehearing Denied May 2, 1928.

1. Appeal and error ⬥⟿766—Brief containing abstract, unrelated propositions held so defective that court would not be obliged to consider it (Court of Civil Appeals Rule No. 31).

Where 25 assignments of error were filed, only 5 of which were indexed, and propositions were mere abstractions relating to entirely different matters, *held* that brief was so defective that court need not consider it, by reason of Court of Civil Appeals Rule No. 31, providing that each proposition shall contain statement of facts addressed to it with reference to authorities relied on to support proposition.

2. Appeal and error ⬥⟿742(1)—Each statement in brief should be addressed to particular point.

Each statement in brief should be addressed to particular point or proposition.

3. Appeal and error ⬥⟿724(1)—Abstract assignment of error not making specific rulings basis of complaint presents no ruling for review.

Abstract assignment of error not making specific ruling basis of complaint and showing how complainant was injured thereby presents no ruling for review.

4. Insurance ⬥⟿355—Evidence held to sustain court's finding that insured never received first notice of death of another member of insurance association.

In wife's action against mutual life insurance association on policy insuring husband, evidence *held* to sustain finding of court that notice of death of two other members had never been mailed to or received by insured or any one authorized to act for him, so as to work forfeiture of rights under by-laws of association for failure to respond thereto.

Error from District Court, Parmer County; Reese Tatum, Judge.

Suit by Carrie A. Lillard against the Mutual Life Insurance Association of Texas. To review a judgment for the plaintiff, defendant brings error. Affirmed.

Underwood, Strickland & Thomerson, of Amarillo, for plaintiff in error.

Underwood, Johnson, Dooley & Simpson, of Amarillo, for defendant in error.

HALL, C. J. This suit was instituted by defendant in error, Mrs Lillard, as the surviving wife of C. L. Lillard, to recover upon a policy of life insurance issued by plaintiff in error, the Mutual Life Insurance Association, alleged to be a corporation.

The substance of the allegations of the defendant in error's petition is: That the association had issued to her husband on the 29th day of July, 1925, a policy of life insurance, in which she was named as beneficiary, insuring her said husband in the sum of $1,500. The policy was made an exhibit to the petition. That prior to the 1st of March, 1927, Lillard had paid all dues and assessments due under the terms of the policy. That on March 1, 1927, the association issued a notice evidenced by a post card in the form of an assessment dated at Amarillo, which contained a notice of two death assessments, in virtue of which all persons receiving said card and being then members of the association were due to pay $2 each, $1 on account of the death of L. F. Kimble and the other on account of the death of J. H. Thomas. Upon said post card, these words were printed: "This assessment must be paid by March 15, 1927, under penalty of suspension." She alleges that said post card was intended to be mailed to the entire membership of said association, but that no such card was ever mailed to her husband, C. L. Lillard, or to her, and that neither of them ever received any such notice; that her said husband, C. L. Lillard, died on the 29th day of March, 1927, at Hereford, Tex., and that at the time of his said death he had paid to said association and tendered payment of all amounts due under said policy, and at the time of his death said policy was in full force and effect, as a legal obligation.

The substance of the association's answer

---

⬥⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes·

is that notice was duly mailed to Lillard in accordance with the terms of the Constitution and by-laws of the association and the provisions of the policy; that Lillard had failed to make payment of the amount due on or before March 15, 1927, or at any time thereafter prior to his death; and that under the provisions of the contract between the parties, he had been suspended and liability of the association had ceased. The defendant pleaded the provisions of the contract which had been breached by Lillard, resulting in the release· of all liability and the avoidance of the policy as an obligation.

Mrs. Lillard pleaded several grounds of waiver and estoppel, which need not be set out in full.

The case was tried to the court without a jury. The findings material to the issue herein discussed may be briefly stated as follows:

Section 6, article 11, of the Constitution and by-laws of the association, is as follows:

"Section 6. A member is automatically suspended at 6 o'clock p. m. on the due date indicated on any assessment notice. A suspended member shall not have absolute right to reinstatement, but may be reinstated upon satisfactory evidence of insurability and the payment of the last assessment at the discretion of the secretary. The mailing of any notice after the due date of any assessment shall, in no way, bind the association or be construed to extend the date of payment of any assessment. The tendering of payment of any assessment after the due date shall be deemed as a reaffirmation of insurability and may be accepted as a reinstatement application by the association."

The court further found: That the policy sued upon contained the following provision: "That it shall be the duty of each member to keep the Panhandle division secretary of the Mutual Life Insurance Association of Texas informed of the post·office address of such member, and in giving notice of any assessment, it shall not be necessary for the Mutual Life Insurance Association of Texas to do more than mail a written or printed notice, properly stamped and addressed, to such member at his or her last known address." That the Constitution and by-laws required the secretary of the association to mail a notice of each assessment to all members at their last known addresses. That on March 1, 1927, death calls Nos. 17 and 18 were issued, calling upon the members of the association to pay $1 on account of the death of Kimble and $1 on account of the death of Thomas. "But in this connection, I specifically find that the defendant association failed to mail to C. L. Lillard, on March 1, 1927, or at any other time up to the 18th of March, 1927, a first notice of these two assessments, and that no such card as a first notice was ever stamped and properly addressed by the defendant and mailed to C. L. Lillard."

From a judgment rendered against the as-

sociation in accordance with the court's findings, this appeal is prosecuted.

The plaintiff in error filed 25 assignments of error, and we find in the brief 38 propositions. Only 5 of these propositions have been indexed, and they are grouped and followed by a statement gathered from the statement of facts of more than 30 pages. The evidence included in this statement bearing upon the several propositions is all intermingled and is so confusing that it is difficult to ascertain exactly the points being urged.

The first one of the propositions is to the effect that under the provisions of a policy which declares that a failure to pay an assessment within 15 days after notice would automatically forfeit the policy, it was only necessary for such an association to mail a printed notice, properly stamped and addressed, to a member at his last.known address, and that a failure to pay the amount due resulted in a forfeiture of his rights under the policy. This is an abstract proposition of law and has no bearing upon the issues before us, because the provision with reference to the failure to pay an assessment resulted in suspending the member temporarily, subject to reinstatement, and did not result in utterly forfeiting all his rights under the policy.

The second proposition is that a forfeiture of a mutual benefit policy for nonpayment of assessments is not waived by notices of subsequent assessments.

The fourth proposition is that a judgment based on findings contrary to the overwhelming weight of evidence should be reversed.

The tweny-eighth proposition is that a general custom of an insurance company not to treat policies forfeited for nonpayment of premium will not override the written terms of the contract between the parties; and the thirty-eighth proposition is, in effect, that where the testimony showed that a member was automatically suspended, that he was ill in a hospital where he soon died, and was not an insurable risk, all of which facts were suppressed and kept from the association, which had never cashed nor accepted a check for reinstatement, did not prevent a forfeiture of the policy.

[1, 2] It will be seen that these propositions are mere abstractions. They do not point out any error and are nothing more than reasoning or argument in support of some· contention urged by the.plaintiff in error. They do not show in what respect the matters complained of.injured the plaintiff in error. The five propositions relate to entirely different and separate matters and cannot properly be grouped and considered together. The propositions and the statement which follows them violate Court of Civil Appeals Rule No. 31. The statement is addressed to the right of the association to declare the policy a nullity on account of the

failure of Lillard to pay the assessment within the required time, and the evidence quoted bears not only upon this issue and whether the notice was ever mailed or received by Lillard, but is also addressed to each one of the several grounds of waiver and estoppel asserted in the defendant in error's pleadings. Each statement should be addressed to a particular point or proposition, and this court should not be required to search a statement covering 30 pages of typewritten matter for the purpose of ascertaining what particular part of the statement is referable to either of the five propositions grouped.

[3] As said by Judge Speer, in Barnes Bros. et al. v. International & G. N. R. R. Co. (Tex. Com. App.) 1 S. W. (2d) 273, an abstract assignment of error, not making a specific ruling the basis of complaint and showing how complainant was injured thereby, presents no ruling for review.

These several propositions are in no way related, and rule 31 provides that each proposition shall contain a statement addressed to it with reference to the authorities relied on to support the proposition. The plaintiff in error's brief, therefore, is so defective that we would not be required to consider it. Warren v. Houston Oil Co. of Texas (Tex. Civ. App.) 296 S. W. 637, and authorities there cited.

We have, however, reviewed the record and have concluded that a proper judgment has been rendered and that it may be sustained upon the finding of the court with reference to the failure of the association to mail the notice of the assessment to Lillard, as required by the Constitution and by-laws. We think this finding and the conclusion of law following it are amply supported by the record. This makes it unnecessary for us to consider any of the other numerous propositions urged in the brief.

The appellee, Mrs. Lillard, upon this point, testified as follows:

"We had a box at the post office. Mr. Lillard did not go to the office very much between February 28th and the 14th of March. I went to the post office, and the doctor that was there (Dr. A. T. McElroy) also did. I can't recall that Mr. Lillard went to the office a single time after that date. Dr. McElroy was getting his mail in our post office box. Sometimes he would get the mail and sometimes I would get it, but Doctor got it most of the time. Our children never went for the mail. When the Doctor would get the mail, he would put it on Mr. Lillard's desk. When I came to the office, I would get it and take it home. I never saw the first notice or duplicate of this card. It was never called to my attention in any way. This card (the one stamped 'Second Notice') was the only one ever called to my attention, or that was ever found in my husband's mail, and I never saw any other."

Dr. A. T. McElroy, who officed with Lillard, and whose mail was put in the same post office box, testified:

"I recall that Mr. Lillard got sick and went to the hospital. While he was away, I got the mail out of the box. I took his and laid it on his desk and kept mine. I'd put on my glasses and sort out my mail and lay his on his desk. I didn't throw any of his mail away. I think I got the mail exclusively every day while he and his wife were at the hospital. I don't remember ever failing to get it. To the best of my recollection, he continued to come to my office for about three or four days after the 2d of March. I think most likely I got the mail those few days. The post office box is a combination box. Each one of us knew the combination. I got the mail on the morning of the 1st of March, because I didn't leave town until the afternoon. I came back the 2d at nine o'clock at night."

Scott Ware and Glen Ware, brothers of the appellee, testified that the card marked "Second Notice" is the only one found in Lillard's mail; that they did not find any first notice card, nor did they ever see one.

Walker, the secretary of the appellant company, testified that he was able to swear that he mailed the first notice, but, on cross-examination, admitted that he had no first-hand knowledge that the first notice was ever mailed, but said:

"I know this, because, in the first place, very competent stenographers address them, and, in the second place, they are checked three times before they leave the office, and, in the third place, there were some peculiar circumstances surrounding Mr. Lillard that called my attention to his card. We bought him out at Friona, and he told us he might carry it awhile. Some others in the office knew all about it, and they remarked that Lillard was still carrying his insurance."

Mrs. Walker also testified that she particularly noted the fact that Lillard's card had been addressed to him, because she addressed it. She testified:

"After I addressed this card, it was handed in with the rest of the cards, to my husband, who checked them. It was then put in the mails. I saw it tied up and taken to the post office."

The party who took the bundle of cards, there being about 1,700 of them, to the post office, and actually mailed them, was not introduced as a witness, and no witness testified positively that the card notice in question was ever mailed. No proof was offered to show that any other member of the association received any of the cards sent out as first notices.

[4] In the light of this testimony, we do not feel warranted in setting aside the finding of the trial court that a first notice or death call had never been mailed to or received by Lillard or any one authorized to act for him. Winters Mutual Aid Ass'n v. Corum (Tex. Civ. App.) 297 S. W. 238.

The judgment is affirmed.