## ÆTNA LIFE INS. CO. v. SCHENCK et al.
### (No. 1720.)

Court of Civil Appeals of Texas. Beaumont.
Nov. 2, 1928.

Rehearing Denied Nov. 7, 1928.

Fulbright, Crooker & Freeman, of Houston, for appellant.

E. B. Pickett, Jr., of Liberty, for appellees.

O'QUINN, J. This suit was brought in the district court of Liberty county, Tex., by appellees, Mrs. Hannah Schenck, for herself and as next friend of her three minor children, to set aside an award of the Industrial Accident Board of the State of Texas, made November 9, 1926, denying appellees compensation for the death of B. G. Schenck, husband of Mrs. Schenck and father of said minor children, alleged to have occurred on July 18, 1926, while in the course of his employment as an employé of the Roxanna Petroleum Corporation; appellees claiming compensation at the rate of $20 per week for 401 weeks. Appropriate and sufficient allegations were made by appellees to bring the award of the Industrial Accident Board denying compensation before the court for determination.

Appellant, defendant below, answered by general demurrer and general denial.

At the close of the evidence, appellant requested a peremptory instruction in its favor, which was denied, and the case was submitted to a jury upon special issues, in answer to which the jury found that deceased, Schenck, received the injury from which his death resulted while engaged in the course of his employment, and that appellees were entitled to receive compensation in a lump sum. Upon these findings judgment was entered in favor of appellees, from which appellant brings this appeal.

B. G. Schenck, the deceased, was an employé of the Roxanna Petroleum Corporation, which carried a policy of insurance with appellant, the Ætna Insurance Company, covering its employés under the Workmen's Compensation Act, at the time Schenck was killed by the overturning of an automobile in which he was riding. Schenck was being paid $225 per month straight time. He was engaged in the geophysical department of his employer, and had charge of one of the seismograph parties exploring acreage for oil. He had charge of both the explosives used and the crew that operated the instruments, explosives, etc. The Roxanna Petroleum Corporation furnished him a car which he used in going about attending to the business of his employer, and also as he pleased in his personal matters and for pleasure. He had free use of the car. Occasionally it became necessary for him to attend to matters pertaining to his employment on Sunday, which he did. He would go to the city of Houston on holidays and Sundays and sometimes there attended to business matters pertaining to his work on Sundays. The company did not require its employés to work on Sundays, except when they were specially requested to do so. If anything arose which in Schenck's judgment it was to the advantage of his employer to have attention on Sunday, he would attend to it without being requested to do so by any one and without consulting any one. His position was one of some authority and responsibility. The Star Electric & Engineering Company was doing business in Houston, and Schenck, in behalf of his employer, bought from it supplies such as radio accessories, wire, meters, etc., to be used in "shooting" operations in which he was engaged for his employer. He would make appointments with persons connected with the Star Electric & Engineering Company and go to Hous-

ton on Sunday to get supplies. This on his own volition. On Tuesday or Wednesday of the week of his death on Sunday, Schenck by long distance telephone ordered some merchandise from said company, and in the conversation inquired of J. P. Lindsay, the representative of said company, about a certain blasting machine, wanting to know if he could get one of said machines. Lindsay testified:

"In that conversation he asked me about a certain blasting machine that he wanted to use, that is, a shooting machine, to use for firing dynamite, and wanted to know if he could get one of those machines. I told him that he could, and would have one sent over to the warehouse, and he said he would be in the week end, and I told him that I would have the blasting machine sent over, and it would be there Sunday for them to see and examine it and see if he could use it in his particular business. He said that arrangement and that date would suit him. He mentioned that he would be in the week end, and if I could have one of the machines there he would examine it, and if it was what he was looking for he would buy it. By that expression I identified Sunday as the time he would be there for that purpose."

Lindsay further testified that he had the machine in the warehouse, and that he stayed at his place of business until noon Sunday waiting for Schenck, but that he did not come. Lindsay had no telephone in his name, and when Schenck telephoned him it was at the store 'phone. Lindsay further testified that when Schenck had business with them on Sunday he usually came in the morning, and that when he did not come by noon that day he concluded that he had "not made connection and had not gotten in," and assumed that deceased had abandoned the trip.

A Mr. Dupree was also an officer of and in active charge of the store of said company, and dealt with Schenck, but he was not in Houston that Sunday and did not see Schenck. He testified that he had sold merchandise to Schenck, and that some of it was sold on Sunday; that he had no conversation with Schenck as to the occasion in question, and did not see him; that he (Dupree) was out of the city on that Sunday; that he had a residence 'phone which was shown in the 'phone directory of the city.

At the time of the accident resulting in his death, Schenck was working in the vicinity of Liberty, Tex., and was staying at Mrs. Lorena Sloan's (at the time of the trial Mrs. R. L. Dearman) rooming house in the town of Liberty. On Saturday evening, July 17, 1926, Schenck took Mrs. Sloan and her little son in his car, that is, the car furnished him by his employer, and they went to Texas City near Galveston to visit Mrs. E. L. Canant, a sister of Mrs. Sloan. They spent the night at Mrs. Canant's. Mrs. Adolph Canant and a younger sister of Mrs. Sloan, Louise Perryman, who lived in Houston, also, by previous agreement, visited Mrs. Canant at Texas City, and they also spent Saturday night there. Sunday, July 18, 1926, they all, including the Canants they were visiting, drove over to Galveston and spent the day on a pleasure trip, and about 3 o'clock in the evening drove back to Texas City, and Schenck, with Mrs. Sloan and her little son, took Mrs. Adolph Canant and Louise Perryman back to Houston, arriving in Houston about dusk. They left Mrs. Canant and Louise Perryman at their stopping place on McKinney avenue, and then Schenck and Mrs. Sloan and her little son went to a café and ate dinner and then immediately left Houston for Liberty, and when near Dayton, some few miles from Liberty, the car went into a ditch, turned upside down, and Schenck was killed. This was about 10:30 Sunday night. It is in evidence that Schenck did not 'phone to any one while with these ladies, nor did he mention any business matter or engagement to them. Mrs. Sloan (since Mrs. Dearman) testified:

"We did not talk to or see any one in Houston that we knew. I was with Mr. Schenck all the time. Mr. Schenck did not telephone or attempt to telephone any one. I am sure of that."

She further testified:

"The trip to Texas City really was not planned. We just decided to go. We decided to go a few minutes after five. Mr. Schenck and I had just been talking about going, but there never was any time set, so when he came in he said, 'Let's go,' and I said, 'All right,' and that was all the planning there was. He said he had no business to attend to on Sunday."

She also testified:

"This trip we went on was for pleasure. There was nothing said on the whole trip with reference to any business of any kind. There was not anything said by Mr. Schenck. I was with him practically all the time from the time we left Liberty until the accident. * * * While we were in Houston I am absolutely positive that Mr. Schenck did not leave me for a minute. After we had been out all day my son and I did not repair to the ladies' rest room for a few minutes; and he did not do the same thing, and was not gone for as much as ten minutes. I feel sure that did not happen."

A written statement made by Mrs. Sloan shortly after the accident was introduced in evidence, in which she said:

"Mr. Schenck had promised my sister, Mrs. Canant, of Texas City, that he would take me down the first Sunday he did not have to work. On Saturday evening, July 17th, when Mr. Schenck came home from work he told me he did not have to work Sunday and for me to get ready and he would drive me to Texas City. This trip was entirely for pleasure and Mr. Schenck made no mention about his work the entire time from Saturday evening until his death. * * * Mr. Schenck did not go near the office of the Roxanna Petroleum Corporation, nor did he make any telephone calls on the night of July 18, 1926."

■ We have stated sufficient of the testimony, we think, pertinent to show the purpose of the trip, going to show whether Schenck was engaged in the business of his master while on the trip, or whether he was combining pleasure with business, or whether the trip was solely for pleasure, entirely disassociated from his employment. The jury, in answer to a special issue, found that deceased received his injury while in the course of his employment. This finding is challenged by appellant as not supported by the evidence, it contending that its request for an instructed verdict should have been granted. From a careful consideration of all the evidence, we have concluded that the jury's finding is so against the great preponderating weight of the evidence as to be wrong, and hence should not stand. In view of another trial, we do not deem it proper to discuss the evidence, but will say that if the evidence on another trial is substantially to the same effect as here, judgment for defendant should be entered.

Appellant also contends that it should have had an instructed verdict, even if deceased's injury was received in the course of his employment, because, it says, the injury was received while deceased was in the performance of labor or services on Sunday, in violation of the criminal laws of this state, in compliance with his contract of employment, which required him to work on Sunday, and therefore the injury was not compensable, for in that the Workmen's Compensation Act and the insurance policy issued thereunder do not cover illegal contracts of employment, or injuries sustained while performing acts in violation of the criminal laws of this state.

■■ This contention is overruled. The contract of employment did not provide for labor on Sunday. True it was a contract for labor by the month with straight time pay, but that did not necessarily mean that deceased was to work on Sunday. He was not engaged in the performance of services that ordinarily called for work on Sunday, but if occasionally matters occurred that made it appear to deceased that something done on Sunday would be to the interest of his employer's business, he could, and at times did, act to promote his master's interest. Because of this, his contract of employment was not in violation of any law, nor did his voluntarily performing some occasional act in the furtherance of his employer's business on Sunday render his contract of employment such as would be in violation of law and hence bar his right to compensation. It is not shown but that the matters done by deceased on Sunday could have been attended to on any other day; in fact, we think it fully appears that such was the case, and that merely as a matter of saving time and accommodating his visits to Houston, where his family resided, deceased performed the acts on Sunday of which appellant complains. Texas Employers' Insurance Association v. Tabor (Tex. Com. App.) 283 S. W. 779. All the testimony, we think, clearly shows that he was at no time requested to work on Sunday, but he voluntarily acted for the promotion of his employer's interest.

The judgment is reversed and the cause remanded.