## MARYLAND CASUALTY CO. v. MARSHALL.
### (No. 3172.)

Court of Civil Appeals of Texas. Amarillo. Feb. 13, 1929.

Rehearing Granted March 6, 1929.

338

Underwood, Johnson, Dooley & Simpson, Vance Huff, and Rip E. Underwood, all of Amarillo, for appellant.

Shannon, Ochsner & Pheiffer, of Amarillo, for appellee.

HALL, C. J. The appellant company filed this suit to set aside an award made by the Industrial Accident Board to appellee, Marshall. The sufficiency of the pleadings is not questioned, and the following brief summary thereof we think is a sufficient statement of the issues for the purposes of this opinion:

The company alleged that the Accident Board had awarded to Marshall certain sums of money in excess of $500 as compensation for certain injuries sustained by him in the course of his employment by the National Drilling Company; that said drilling company was a subscriber to the Workmen's Compensation Act, and on April 13, 1927, Marshall sustained the injuries for which compensation was claimed; that the necessary notices were given and an award made in favor of Marshall. The prayer is that the award be set aside, and that it recover its costs.

By answer and cross-petition Marshall set out the fact of his employment by the drilling company, and that while in the course of his employment he sustained certain personal in-

juries on April 13, 1927; that his employer was insured under the Workmen's Compensation Act by the appellant; that within 30 days after the date of his injuries, which were specifically described, due notice was given to the appellant; that his claim was duly filed with the Accident Board, resulting in an award in his favor in excess of $500; that the appellant had appealed from the award; that prior to the date of his injuries, he had been working for many years in Texas as an oil well driller, with a daily wage of $14 per day; that for substantially a year next preceeding the day of his injuries he had been working as a driller in Hutchinson county at a daily wage of $14; that his average weekly wage was $80.75, and that he was entitled to recover at the rate of $20 per week for a period of 401 weeks; that he was well advanced in years and by reason of his total, permanent incapacity, it would be a manifest hardship and injustice to compensate him otherwise than by a lump sum; that the company had failed to provide medical and surgical aid or pay hospital fees, and by reason of such failure he had employed a nurse at a reasonable and necessary expense of $50 to attend him in the hospital; that he was forced to undergo two operations as a result of his injuries, at a cost of $780.70. He prayed for judgment for these items in addition to $20 per week for 401 weeks.

By supplemental petition the company alleged: That the policies of insurance were not in effect at the time of the injuries sustained by Marshall, because they had been canceled by notice mailed in accordance with the following provision of the policy: "Notice mailed to the address of this employer shall be sufficient notice." That notice of cancellation was mailed on March 29, 1927, and registered to the last known address of the drilling company, which notice informed the drilling company that the policy upon which the suit is based would be canceled as of noon April 9, 1927, which date of cancellation was four days prior to the date of the explosion by which Marshall was injured. As a further defense, the company alleged that Marshall's contract of employment with the drilling company was void and unenforceable for the reason that it required him to work seven days per week, which included working on Sundays, by reason of which it was in violation of the statutes of Texas and null and void.

In reply to this pleading, Marshall alleged that if notice of cancellation was ever mailed on the 29th of March, 1927, it was never received by the drilling company and that said drilling company never had any notice, either actual or constructive, of such cancellation; that subsequent to the mailing of such notice, if any, the general agent of the company at El Paso stated to its local agent at Panhandle, Tex., that the notice of cancellation would not become effective until said local agent

had secured another policy for the drilling company, in lieu of the policy now sued upon, and that said general agent told the local agent at Panhandle that the notice of cancellation might be disregarded until further notice from the company, and by such acts the company had waived and abandoned its notice of cancellation and its intention to cancel the policy under notice of March 29, 1927; that said company further abandoned its intent to cancel the policy on April 9th by preparing and mailing a notice for cancellation on the 14th day of April, 1927, one day after Marshall had sustained the injuries upon which this action is based, which said notice stated that cancellation would be effective April 24, 1927; that the drilling company had paid all premiums due upon said policy to the local agent of appellant company up to and including the 19th day of April, 1927, which premiums were accepted and received by appellant company, thereby waiving its attempt to cancel said policy, effective April 9, 1927.

These allegations were denied by the appellant company. The case was submitted to a jury upon special issues, and in response thereto the jury found, in substance, as follows:

(1) On April 13, 1927, J. F. Marshall sustained injuries resulting in the loss of hearing in his left ear and the loss and use of his left foot and leg.

(2) Such injuries resulted in Marshall's permanent total incapacity.

(3) The average weekly wage of Marshall for the year immediately preceding the date of the injuries was $80.75.

(4) The failure of the Maryland Casualty Company to make a lump sum settlement would work manifest hardship and injustice to Marshall.

(5) That the Maryland Casualty Company, through its officers and agents, waived cancellation of the policy which was intended to take effect on April 9, 1927.

Based upon the verdict, the court rendered judgment in Marshall's favor for $7,879.03, to be paid in a lump sum. The first five propositions urged attack the judgment upon the ground that because Marshall's contract with the drilling company required him to labor on Sundays in violation of the law, the contract was void and would not sustain a recovery.

Article 283 of the Penal Code provides that any person who shall compel, force, or oblige his employees or workmen to labor on Sunday shall be fined not less than $10 nor more than $50, and article 284 provides that article 283 shall not apply to works of necessity. The term "necessity," as used in this statute, is defined to be not an absolute, unavoidable, physical necessity, but rather an economic and moral necessity, and it is held that such necessity might grow out of or be incident to a particular trade or calling. Lane v. State, 68 Tex. Cr. R. 4, 150 S. W. 637; Hennersdorf v. State, 25 Tex. App. 597, 8 S.

W. 926, 8 Am. St. Rep. 448. Texas Employers' Insurance Association v. Tabor (Tex. Com. App.) 283 S. W. 779, announces the rule that a contract of employment which does not conclusively show that it was intended that the employee should work on Sunday in violation of the Penal Code referred to first above is not void as a matter of law, and that the question of intention to violate the law is an issue of fact for the jury.

Many authorities hold that, where the terms of a verbal contract are established by undisputed testimony, its construction and interpretation is a question of law for the court. 6 R. C. L. 862, § 249. Ætna Life Ins. Co. v. Schenck et al. (Tex. Civ. App.) 10 S.W.(2d) 206, holds that, where an employee working by the month was not engaged in the performance of services that ordinarily called for work on Sunday, but occasionally, if necessary, in the interest of the employer's business, the employee would act to promote the master's interest on Sunday, the contract of employment was not in violation of any law and occasional work on Sunday did not bar the right of dependents to compensation for employee's death.

The only testimony bearing upon this contention comes from the employee, Marshall. He testified that his contract of employment with the drilling company and the nature of his work was such that it was contemplated that he would work on straight time seven days per week; that it had to go on during seven days per week in that oil field especially. He stated, however, that he did not know that his contract specified that he should work on Sunday, and that there was no contract between him and his employer specifically requiring him to do so, but it was mutually understood that, when a well was started, it would be pushed through and the work would continue for seven days per week. Upon redirect examination, he testified that the drilling company did not ask him to work any specific length of time and that he was paid so much per day; that there was no written contract and he was not paid for such time as he did not work; that if he worked one day, and missed the next, and worked the next day, he would be paid just for the days he worked. This testimony does not show a clear, definite contract which obligated or compelled Marshall to work on Sunday. It may reasonably be inferred that, unless he desired to work on Sunday, he was at liberty to refuse to do so without violating his obligation to his employer. His statement that in that particular oil field it was specially necessary to work on Sunday was not questioned by the appellant. It is a matter of common knowledge that, in the drilling of oil wells, certain conditions may exist or arise which require the continuous prosecution of the work after an oil well is spudded in, and, so far as the record shows, we must presume, in the absence of some contradiction of Marshall's testimony, that the necessity existed in this case. Where a contract is susceptible of two constructions, one of which would render it valid and the other illegal, the courts will construe it to be legal. The issue as to whether the work done on Sunday was necessary, within the meaning of article 284, was not submitted to the jury. We therefore overrule the first five propositions.

It is contended under the sixth and seventh propositions that the court erred in permitting the proceedings, including the award made by the Industrial Accident Board, to be introduced in evidence. The bill of exceptions in the record does not sustain these propositions. This court held, in the case of Texas Employers' Insurance Association v. Downing, 218 S. W. 112, 120, that these proceedings were admissible for the purpose of showing that the court had jurisdiction of the case as appealed from the award of the board. The rule is that Marshall must show by his pleadings that the court in which the case is being tried had jurisdiction of the amount of his claim. He alleged that he filed the claim before the board for an amount in excess of $500. This was a proper allegation. In order for him to recover, he must prove what he alleged; but evidence of such matter is for the purposes of showing jurisdiction and is a question for the court only. The award should not be read to the jury. A perusal of the bill of exceptions in this case shows that Marshall's counsel offered it for the purposes only of showing the court's jurisdiction, and so stated during the colloquy between the court and counsel for both sides. The bill further shows that these proceedings were not read within the hearing of the jury, and that they were filed with the clerk, to be considered only by the court, to sustain the allegation that a claim had been filed with the Accident Board in excess of $500. Bill of exception No. 6, taken to the action of the court in permitting Marshall to testify that he had filed a claim for compensation with the Industrial Accident Board in excess of $500, shows that this testimony was given in the absence of the jury and for the sole purpose of establishing jurisdiction. Since the record does not sustain the contentions, the two propositions relating to this matter are overruled.

Dr. Southall, residing in Hutchinson county, was introduced as a witness by appellee, for the purpose of testifying as an expert upon the issue of the reasonableness of the item, amounting to $780.70, which Marshall alleges he paid to some California surgeons for two operations upon his injured foot and leg. The appellant objected to this testimony upon one ground, amongst others, that the witness was disqualified to give his opinion, because the operations were performed in California, and the witness showed that he knew nothing whatever about usual and customary charges for such services in

the foreign state. The record shows that appellee failed to request the submission of this issue to the jury. Such failure must be construed as a waiver and abandonment of that ground of action. Ormsby v. Ratcliffe (Tex. Com. App.) 1 S.W.(2d) 1084.

Propositions 9 to 14, inclusive, challenge the action of the court in overruling appellant's objections to certain letters, telegrams, and conversations between Wayne O'Keefe and the general agents of appellant with reference to the cancellation of the policy of insurance by appellant. These propositions, except the tenth, are mere abstract statements of rules of law, which may or may not be correct. They do not complain of any error committed by the court, nor is there any specification of error as required by the rules with reference to the matters complained of and are therefore not entitled to consideration. Mutual Life Insurance Association of Texas v. Lillard (Tex. Civ. App.) 5 S.W.(2d) 586, Barnes Bros. v. International & G. N. Ry. (Tex. Com. App.) 1 S.W.(2d) 273.

By the tenth proposition, the appellant insists that the court erred in admitting in evidence, over appellant's objections, a letter written by the local agent of the insurance company to the company itself, insisting that there was no cancellation, as claimed by the insurance company, and that the insurance company had waived the cancellation.

If it be admitted that this statement in the letter was inadmissible, appellant is in no position to complain here, since other parts of the letter were clearly admissible. The objections made were to the letter as a whole, and it was the duty of appellant to separate the inadmissible portions of the letter from the remainder of it. It is not the duty of the court, nor the opposing counsel, when testimony is offered as a whole, to separate the relevant from the irrelevant, or the competent from the incompetent, and as against a general objection the court does not err in admitting the whole instrument. The testimony which was objected to, and which is discussed in the argument following these propositions, related to the issue of the cancellation of the policy, which the appellant claimed had been effected by its notice of March 29, 1927, the purport of which was to cancel the policy as of April 9, 1927, four days before the date of the injury. Marshall pleaded that no such notice had been given; that, if given, it had never been received, and had been waived by a later notice canceling the policy as of April 24th. This letter and these notices, together with the telegrams and the conversations which O'Keefe had with the general agents in El Paso, were all relevant testimony bearing upon the issues of cancellation and waiver. They were all facts forming part of the same transaction and as such were admissible under the res gestæ rule. West Side Oil Co. v. McDorman (Tex. Civ. App.) 244 S. W. 167; Empire Gas & Fuel Co. v. Pendar (Tex. Civ.

App.) 244 S. W. 184; Darby v. Farmers' State Bank of Burkburnett (Tex. Civ. App.) 253 S. W. 341; H. & T. C. Ry. Co. v. Brooks (Tex. Civ. App.) 294 S. W. 282; Durham v. Scrivener (Tex. Civ. App.) 259 S. W. 606; Id. (Tex. Com. App.) 270 S. W. 161; Bourland v. Huffhines (Tex. Civ. App.) 244 S. W. 847.

The evidence conclusively shows that O'Keefe was the agent of the Maryland Casualty Company, within the meaning of R. S. art. 5056, which provides that any person who solicits insurance on behalf of an insurance company, or who takes or transmits, other than for himself, any application for insurance or any policy of insurance to or from such company, or who shall receive or deliver a policy of insurance for any such company, or receive or collect or transmit any premium of insurance, or do or perform any act or thing in the making or consummating of any contract of insurance for or with any such insurance company, shall be held to be the agent of the company for which the act is done or the risk is taken, as far as relates to all the liability, duties, requirements, and penalties set forth in the chapter. The testimony shows that O'Keefe took the applications for policies, delivered the policies when written, collected the premiums, and was recognized by the company and its general agents at El Paso as the agent of appellant. He was specially delegated by Taylor, one of the general agents, to act with reference to these matters, and his acts, admissions, and declarations in regard thereto are admissible as a part of the res gestæ and binding upon the corporation. Farmers' Mill & Elevator Co. v. Hodges (Tex. Com. App.) 260 S. W. 166.

Appellant suggests fundamental error, in that the judgment fails to cancel the award of the Industrial Accident Board and fails to decree a recovery by Marshall of a lump sum. The recital in the judgment is "that Marshall do have and recover of said defendant in cross-action, Maryland Casualty Company, the sum of $7,879.03, with interest thereon at the rate of 6 per cent. per annum from this date," and awards execution. There is no provision in the judgment that it is to be paid in weekly installments, and we think the effect of it is that Marshall shall recover the whole amount awarded him in a lump sum. While the judgment may not in express terms cancel and annul the award of the Accident Board, that is its legal effect. In any event, it may be reformed here in both of these particulars.

Because the appellee failed to submit to the jury an issue upon his right to recover the item of $780.70 as surgeon's fees and charges, the judgment is excessive in that amount, and will be reversed, unless the appellee enters a remittitur in this court in writing of said sum within the next 20 days. Failing in this, the judgment will be reversed, and the cause remanded for another trial. Otherwise, it will be affirmed.

### On Motion for Rehearing.

By the original opinion, we affirmed this judgment upon condition that the appellee enter a remittitur of $780.70 within 20 days. Both parties have filed motions for rehearing.

Upon a review of the record, we find that the court entered judgment for $7,879.03 in a lump sum, with interest thereon from the date of the judgment. This judgment evidently includes the item of $780.70, or a part thereof, which it appears was for surgeon's charges and hospital fees paid by the appellee in California, incident to an operation upon his injured foot and leg. The record throws no light upon the question whether the court allowed the whole amount claimed for surgeon's fees and hospital charges, or only a portion of these items. The only proof introduced upon this ground of appellee's recovery was the testimony of Dr. Southall, a resident of Hutchinson county. While he testified that the charges were reasonable, he also stated that there was no standard of charges by surgeons generally accepted through the country; that each surgeon fixes his own compensation, and that the charges for such services depended upon the skill and ability of the surgeon, as well as upon the financial ability of the patient to pay; that one patient might be charged one amount, and that another patient, who was wealthy, was frequently charged as much as ten times that sum for the very same services. These facts render the testimony of Dr. Southall so uncertain upon the issue of the reasonableness of the charges that it should not be accepted in support of the judgment, even though a Texas surgeon was otherwise qualified to testify as to the value of such services in a foreign state—an issue which we do not decide. In the case of Petroleum Casualty Co. v. Green (Tex. Civ. App.) 11 S.W.(2d) 388, Chief Justice Gallagher holds that competent proof of the reasonableness of such charges is necessary before a recovery can be properly awarded.

No issue was submitted to the jury as to the present value of the appellee's claim, when paid in a lump sum. In other words, the jury was not asked to find what rate of discount should apply to the appellee's claim in awarding a judgment for a lump sum. The statutes do not fix this rate of discount. The full amount of the appellee's recovery, if paid weekly for 401 weeks at $20 per week, would have been $8,020, and while the record discloses that this amount was discounted at some rate, we are not able to determine what that rate was, and the rule seems to be that the rate of discount to be applied is a question of fact, to be determined in each case by the court or jury considering the facts. Texas Employer's Insurance Association v. Herzing (Tex. Civ. App.) 9 S.W.(2d) 457; Lumbermen's Reciprocal Association v. Behnken (Tex. Civ. App.) 226 S. W. 154; Id., 112 Tex., 103, 246 S. W. 72, 28 A. L. R. 1402; Consolidated Underwriters v. Saxon (Tex. Civ. App.) 250 S. W. 447; Id. (Tex. Com. App.) 265 S W. 143; Western Indemnity Co. v. Milam (Tex. Civ. App.) 230 S. W. 825.

From these decisions, the conclusion must be drawn that the court should not only submit to the jury whether the claimant is entitled to a lump sum settlement, and in the event the jury finds that the injured party is entitled to a lump sum settlement, then the issue should be submitted inquiring as to the rate of discount or the present value of the claim, if paid in a lump sum.

After a careful consideration of the motions for rehearing, we have concluded that the judgment is not supported by the findings of the jury, and that the court could not estimate the present value of the claim when paid in a lump sum, and because there is no finding as to what would be reasonable compensation for the California surgeon's fees and hospital fees, the proper disposition to be made of the case is to reverse the judgment and remand the case for another trial; and it is accordingly so ordered.

Reversed and remanded.